BOWMAN v. WAYNE CIRCUIT JUDGE.

1. STATUTES — CONSTRUCTION — EFFECT OF WORDS "MAY" AND "SHALL"—LEGISLATIVE INTENT.

   While in the construction of statutes the word "may" has sometimes been treated as mandatory, and "shall" in some cases has been held to be permissive or directory, these words should be given that effect necessary to carry out the intention of the legislature under the ordinary rules of construction.

On constitutionality of statute for the enforcement of decree for alimony or for punishment for the disobedience thereof, see note in L. R. A. 1918F, 424.

For authorities discussing the question of constitutionality of imprisonment for debt, see notes in 34 L. R. A. 634; L. R. A. 1915B 645.

2. SAME—DIVORCE—ALIMONY—ARREST—MANDATORY PROVISION.

> In view of the purpose of 3 Comp. Laws 1915, § 11443 *et seq.*, that orders and decrees for payment of alimony should be enforced with less difficulty and greater freedom from delays, the words "shall forthwith issue an attachment," in 3 Comp. Laws 1915, § 11444, *held*, to be mandatory.

3. SAME—REPEAL—CONTEMPT—JUDICATURE ACT.

> Said section 11444, *held*, not repealed by the repealing section of the judicature act (3 Comp. Laws 1915, § 14465) by providing a method for punishment of contempt (section 12268 *et seq.*).

4. CONSTITUTIONAL LAW — STATUTES — DUE PROCESS OF LAW — ARREST FOR DEBT—ALIMONY.

> Act No. 379, Pub. Acts 1913 (3 Comp. Laws 1915, § 11443 *et seq.*), providing for the arrest of a party in default in payment of alimony, is not unconstitutional as depriving a party of his liberty without due process of law, in violation of section 16, Art. 2, Const. Michigan, nor as an arrest without probable cause (section 10, Art. 2), nor as an imprisonment for debt (section 20, Art. 2), alimony not being a "debt" within the contemplation of the constitutional inhibition, the holding in *Steller* v. *Steller*, 25 Mich. 159, being overruled.

Mandamus by Nellie Bowman to compel Arthur Webster, circuit judge of Wayne county, to vacate an order denying an attachment for the nonpayment of alimony. Submitted April 12, 1921. (Calendar No. 29,335.) Writ granted June 6, 1921.

*Benedict H. Lee,* for plaintiff.

CLARK, J. Following personal service of summons with copy of the bill of complaint containing a petition for temporary alimony with notice of hearing, and after hearing thereof on April 24, 1920, William H. Bowman, defendant in the cause, was ordered to pay to the clerk of the Wayne circuit court as temporary alimony for the support of plaintiff, his

wife, and their two children the sum of $20 per week in advance commencing with the date of the order, and he was also ordered to pay an attorney's fee of $50. A certified copy of the order was served upon William H. Bowman personally at Detroit on April 30, 1920. On June 28, 1920, said defendant Bowman having paid nothing toward the weekly allowance nor the attorney's fee, motion for attachment under the provision of Act No. 379, Pub. Acts 1913 (3 Comp. Laws 1915, § 11443 *et seq.*), was filed and order for attachment of the said defendant William H. Bowman sought, and denied. A motion to set aside the order denying the attachment was also denied.

We are asked to compel by mandamus the issuance of the attachment. As reasons for denial aforesaid the circuit judge returns:

1. "That the provisions of section 2 of Act No. 379 of the Michigan Public Acts of 1913, being section 11444 of the Michigan Compiled Laws of 1915, are directory merely and not mandatory, and should be so construed as to permit the circuit judge to exercise his discretion as to whether a writ of attachment to show cause should issue or not."

The important sections of the act are:

"SECTION 1. In all suits for divorce and separate maintenance where an order or decree for the payment of temporary or permanent alimony has been made, and where the party, whether complainant or defendant, has appeared in person or by solicitor or has been personally served with process within the jurisdiction of the court making such order or decree for the payment of alimony, the court making such order or decree shall have power to punish by fine and imprisonment or both, any neglect or violation of said order, upon the petition of the party whose rights thereunder may have been impaired, impeded or prejudiced by such neglect or violation of said order.

"SEC. 2. When any decree or order shall have been made for the payment of temporary or permanent

alimony to be paid in certain ,stipulated payments directed to be made in said order to the register of the court, and any of such payments shall be in default, the party prejudiced thereby may make a motion before the court making such order showing by the records in the register's office that such default has been made, and thereupon the court shall forthwith issue an attachment to arrest such party in default and bring him immediately before the court to answer for such neglect.

"SEC. 3. No demand of any kind or notice of the making of the order for the payment of such alimony shall be necessary in the cases enumerated in the first section of this act.

"SEC. 4. When said attachment shall be issued it shall be executed by the sheriff of the county, or by any officer authorized to make such arrest, who shall arrest the party named therein and keep him in actual custody and bring him forthwith before the court issuing such attachment, and shall keep and detain him until the court shall make some further order in the premises.

"SEC. 5. The party arrested on such attachment shall be discharged therefrom upon executing and delivering to the register of the court issuing such attachment, a bond with two sufficient sureties in a penal sum to be fixed by the register, conditioned for the immediate and faithful performance of the terms of said order for the payment of alimony, or said party may be discharged from arrest by such other order in the premises as the court may enter therein after a full hearing thereon."

"May" has sometimes been treated as mandatory, and "shall" in some cases has been held to be permissive or directory.   These words should be given that effect necessary to carry out the intention of the legislature under the ordinary rules of construction. See 5 L. R. A. (N. S.) 340; 36 Cyc. p. 1160; *Freud* v. *Wayne Circuit Judge,* 131 Mich. 606; *Village of Durand* v. *Shiawassee County Sup'rs,* 132 Mich. 448.

The title of the act "An act to facilitate the col-

lection of temporary and permanent alimony ordered to be paid in suits for divorce" indicates a legislative intention that orders and decrees for payment of alimony should be enforced with less difficulty and with greater freedom from delays and impediments than had attended former methods. And the legislature sought to make its meaning plain by using with the words "shall issue" the adverb "forthwith" which is defined:—directly, immediately, without delay.

The words "shall forthwith issue an attachment" must be held to be mandatory.

2. That section 2, Act No. 379, Pub. Acts of 1913 (section 11444, 3 Comp. Laws of 1915), .

"has been repealed by the repealing section of the judicature act (section 14465, 3 Comp. Laws 1915) by providing a method for the punishment of contempts inconsistent with that provided by the judicature act (being chapter 5 thereof) and section 12268 and those following of the Compiled Laws of 1915."

We do not agree with this contention. Chapter 5 of the judicature act of 1915 (3 Comp. Laws 1915, § 12268 *et seq.*), provides for proceedings for contempt. Act No. 379, Pub. Acts of 1913 (3 Comp. Laws 1915, § 11443 *et seq.*), is not strictly a statute respecting contempts. The purpose of the act was to provide a summary and effective method of enforcing the orders and decrees of courts respecting alimony. In *Whitman* v. *Branstrom*, 202 Mich. at page 462, it is said of the statute under consideration:

"It is apparent that this whole proceeding is a court proceeding, and not a matter that could be initiated, or heard before the circuit judge. The statute contemplates that the party is not yet in contempt, and could not be, under our statutes and decisions, until he had had a hearing in court."

See *In re Merrill*, 200 Mich. 249; *Dwyer* v. *Wayne*

*Circuit Judge*, 197 Mich. 383; *Oxford* v. *Berry*, 204 Mich. 197; *Ex parte Merrill*, 245 Fed. 780.

3. That said act (Act No. 379, Pub. Acts 1913)

"is unconstitutional and in conflict with section 16 of article 2 of the State Constitution as depriving a party of his liberty without due process of law, and in conflict with section 10 of article 2 of the State Constitution as authorizing an order for arrest without any showing of probable cause under oath."

There has been due process of law.   The said defendant William H. Bowman was personally served at Detroit with summons, copy of the bill of complaint, petition for alimony and notice of hearing thereof.   And the plaintiff took the precaution of serving him with a certified copy of the order for payment of alimony.

Of a similar statute (section 13765, 3 Comp. Laws 1915) respecting the issuing of warrants by a judge of probate where the same objection was made, this court, *In re Merrill, supra*, said:

"There is therefore no force in the objection of the petitioner that said warrant was issued without an order to show cause, or a preliminary hearing.   Petitioner was well advised of every step in the proceedings antecedent to the issuance of said warrant.   He contested the making of the order, requiring the payment of the trust fund, in the probate court, in the circuit court, and in this court, and after the remittiturs were filed in the probate court, a demand was made upon him to comply with said order.   This he refused to do in wilful defiance of the law as it had been established after the most exhaustive examination in the court of last resort in this State.   In the light of the history of this litigation, the contention of the petitioner that the statute and the proceedings had thereunder do not afford petitioner equal protection of the law and is not due process of law within the 14th Amendment of the Constitution of the United States, is untenable.   Cooley on Constitutional Limita-

tions (7th Ed.), p. 496; *Miedreich* v. *Lauenstein*, 232 U. S. 236 (34 Sup. Ct. 309)."

And from an opinion in the same cause, *Ex parte Merrill*, 245 Fed. 780, we quote with approval:

"The arguments of petitioner, based on the contention that his imprisonment is without due process of law and contrary to the United States Constitution, are necessarily founded upon the idea that the issuance of such warrant is in the nature of a proceeding to punish for contempt of court, rather than in the nature of process to enforce an order of the court. With this contention, however, I am unable to agree. It seems to me that the purpose of the statute authorizing such warrant was to provide an effective, if somewhat summary, method of enforcing the orders of the probate court, and that the warrant so authorized is in the nature of a body execution. This construction of the statute is, I think, fortified by the fact that in another subdivision of the same section of the statute, following the provision already considered, the probate judge is empowered 'to punish any contempt of his authority, in like manner as such contempt may be punished in the circuit court.' It seems clear that the specific granting of the power to punish for contempt of court, following the granting of the power to issue the warrant in question, indicates an intention to confer two separate and distinct powers; the one being the power to enforce the orders of the court, and the other the power to punish for contempt of court."

And upon the contention that the issuing of the attachment without notice, hearing or order to show cause offends the constitutional requirement of due process of law, it was correctly said in *Ex parte Audet*, 38 R. I. 43 (94 Atl. 678):

"To state the matter of the petitioner's claim more specifically, he contends that the statute in question does not provide for a hearing upon the question as to whether payment of the allowance under the decree had been made; that in the present case he had had no hearing in fact; and that such question was adjudi-

cated in his absence.   The petitioner, as the respondent in the divorce proceeding, had full knowledge of the entry of the decree providing for the weekly allowance to his wife, and that, upon his failure to meet such payments, the same would ripen into a judgment, upon which an execution might be issued against him, and upon which he would be liable to be committed to jail.   If he was of insufficient ability to pay the allowance he had the opportunity of presenting testimony and argument to that effect to the court at the time when the decree was entered.   If he became so impoverished at some later period as to be unable to continue such payments, he could have represented that fact to the court, and sought a modification of the decree or the annulment of that portion which related to allowance.   The petitioner does not now allege that he has paid the allowance or that he has failed to pay it through lack of means, and it may therefore be assumed that he has neither paid nor become too poor to pay.   With full knowledge of the judgment that was maturing against him, under the statute and the decree of the court, and that execution would become issuable thereon, the petitioner made no effort to modify or annul the decree, so far as the matter of allowance is concerned, but remained quiescent until he was committed to jail, and then asks for a writ of *habeas corpus* upon the ground that an execution was issued upon the judgment against him without a hearing.   His position is no different from that of any other judgment debtor, who might contend that an execution was issued against him without his being accorded a hearing as to whether he had already paid the judgment.   We see nothing unconstitutional in the act of the general assembly in question, nor that the petitioner has been in any way deprived of his liberty or property without due process of law."

See L. R. A. 1918F, 424; *Judd* v. *Judd,* 125 Mich. 228; *People* v. *Dickerson,* 164 Mich. 148 (33 L. R. A. [N. S.] 917, Ann. Cas. 1912B, 688) ; *Parsons* v. *Russell,* 11 Mich. 113 (83 Am. Dec. 728) ; *High* v. *Bank of Commerce,* 95 Cal. 386 (30 Pac. 556).

Section 10, article 2, of the State Constitution is:

"SECTION 10. The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation."

What has been said disposes of the contention respecting this section. But it may be added that upon motion the court records as provided by the statute are grounds for issuing the attachment. But before it issues must there be a showing of probable cause supported by oath or affirmation that said defendant had not paid the alimony as ordered? It might be urged with equal force that before an execution, shall issue to seize the goods of a judgment debtor there must be a showing of probable cause supported by oath or affirmation that the judgment had not been paid.

4. And, finally, it is urged that the act providing for an attachment for nonpayment of alimony violates section 20 of article 2 of the State Constitution which reads:

"SECTION 20. No person shall be imprisoned for debt arising out of, or founded on a contract, express or implied, except in cases of fraud or breach of trust, or of moneys collected by public officers or in any professional employment. No person shall be imprisoned for military fine in time of peace."

The defendant circuit judge with good reason relies upon an opinion of this court written in 1872 by Justice COOLEY, *Steller* v. *Steller*, 25 Mich. 159. There as here the showing was that payment of temporary alimony as ordered had not been made and defendant claimed the benefit of the constitutional provision inhibiting imprisonment for debt, that he was liable to the commitment by way of punishment only and that

he was entitled first to show cause against it under section 4077, 2 Comp. Laws 1857, and it was held:

"Whatever may have been the proper construction of this statute, we are clear that, with imprisonment for debt forbidden, a party can not be imprisoned for noncompliance with such an order, except on the ground of contempt of the authority of the court. There must be in the case something of wrong beyond the mere failure to pay money." * * *

Our attention is called to and our own investigation reveals no case in this court where this precise point has been followed or overruled. It was held in *Re Merrill, supra,* where there had been neglect and refusal to pay a sum of money as ordered by the probate judge that the imprisonment therefor "is not imprisonment for debt within section 20, article 2." See, also, *Carnahan* v. *Carnahan,* 143 Mich. 390 (8 Ann. Cas. 53) ; *In re Wood,* 82 Mich. 75. The great weight of authority now is that alimony is not a debt within the contemplation of the constitutional inhibition. It is said in 19 C. J. p. 301, § 692:

"While there is authority to the contrary, the general and better rule is that alimony is not a 'debt' within the meaning of statutes or constitutions which prohibit imprisonment for debt."

See cases cited in the foot notes to this section.

And it is said in 2 Nelson on Divorce and Separation, p. 904:

"It has frequently been insisted that a decree for alimony is in fact a debt, and therefore payment should not be enforced by attachment for contempt where the constitution prohibits imprisonment for debt. But it is uniformly held, and such is the true doctrine, that the decree for alimony is an order of the court to the husband compelling him to support his wife by paying certain sums, and thus perform a public as well as a marital duty. Such decree is something more than an ordinary debt or judgment

for money. It is a personal order to the husband, similar to an order of the court to one of its officers or to an attorney. The imprisonment is not alone to enforce the payment of money but to punish the disobedience of a party; and the order is not, therefore, a debt, within the meaning of the constitution."

Doubts as to the constitutionality of the act should be resolved if possible in its favor. The trend of more modern opinion, the weight of authority, and the apparent wisdom of the legislation impel us to depart from the said holding quoted from *Steller* v. *Steller, supra,* and to hold that Act No. 379, Pub. Acts 1913, does not offend said section 20, article 2.

The writ will issue as prayed. Plaintiff will recover costs against William H. Bowman, defendant in the principal cause.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.