## ATTLEBORO TRUST COMPANY *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk.   March 2, 1926. — September 17, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Tax,* Abatement, Trust company with savings department. *Commissioner of Corporations and Taxation.   Trust Company.   Public Officer. Mandamus.   Words,* "*May.*"

In estimating the fair cash value of all the shares of capital stock of a Massachusetts trust company, having a savings department in addition to its commercial department, for the purpose of levying a franchise tax under G. L. c. 63, § 55, the commissioner should deduct, under § 55, Fifth, mortgages of real estate taxable in this Commonwealth, to the extent of loans which they secure collaterally, as real estate subject to local taxation.   Following *United States Trust Co.* v. *Commonwealth,* 245 Mass. 75.

Upon a proper construction of G. L. c. 63, §§ 11, 12 (b), 14, 55, Fifth, in assessing a franchise tax for the year 1922 upon a Massachusetts trust company conducting a savings department, so much of every deposit in excess of $2,000 in the savings department as was invested in a mortgage or mortgages of real estate in this Commonwealth should be deducted as real estate subject to local taxation.

The two years after the date of the tax bill on which an application can be made under G. L. c. 58, § 27, as amended by St. 1922, c. 382, for a certificate for abatement of a tax, cannot be limited or shortened by the commissioner of corporations and taxation; the word "may" as used in the statute means "must."

When a statute directs the doing of an act by a public officer in the interest of justice or the public good and states that the officer "may" take such action, the word "may" is to be construed as "shall."

When it appears to the commissioner of corporations and taxation, upon an application made to him within two years after the date of a tax bill issued for an income tax, a legacy and succession tax, or a tax or excise upon a corporation, foreign or domestic, that the tax was in whole or in part illegally assessed or levied, or was excessive or unwarranted, the provisions of G. L. c. 58, § 27, as amended by St. 1922, c. 382, require him, with the approval of the Attorney General, to issue a certificate that the party aggrieved by such tax or excise is entitled to an abatement, stating the amount thereof, which amount shall not exceed the sum "which in equity and good conscience ought to be abated under all the circumstances of the case."

The time for making applications under G. L. c. 58, § 27, as amended by St. 1922, c. 382, definitely fixed at two years from the date of the tax bill, cannot be limited or shortened by the commissioner.

Upon a refusal by the commissioner of corporations and taxation to per-
form the duty laid upon him by G. L. c. 58, § 27, as amended by St.
1922, c. 382, as above construed, a petition for a writ of mandamus may
be maintained to compel him to perform that duty.

Upon the filing, within two years after the date of a tax bill, of an applica-
tion under G. L. c. 58, § 27, as amended by St. 1922, c. 382, it is the
duty of the commissioner of corporations and taxation to consider the
application, and, if it should appear that the tax or excise assessed or
levied against the applicant was in whole or in part illegally assessed
or levied, or was excessive or unwarranted, to submit for the approval
of the Attorney General a certificate setting out the grounds on which
it is based and stating the amount of abatement to which the applicant
in equity and good conscience is entitled.

PETITION, filed in the Supreme Judicial Court for the
county of Suffolk on May 25, 1925, for a writ of mandamus
directing the respondent, "if it shall appear that" a fran-
chise "tax or excise" levied upon the petitioner for the year
1922 "was in whole or in part illegally assessed or levied or
was excessive or unwarranted, to submit a certificate, for the
approval of the Attorney General, that the petitioner is
aggrieved by said tax and is entitled to an abatement for an
amount which in equity and good conscience ought to be
abated under all the circumstances of the case, all as provided
in G. L. c. 58, § 27, as amended, together with interest and
costs, and for such other and further relief as to this Court
may seem just and proper."

This and twenty-two similar suits were consolidated for
trial together and were referred to an auditor.

Among findings by the auditor were the following: that
the "trust company paid in 1922 a franchise tax of $6,776.91;
that the minimum tax said trust company was required to
pay under G. L. c. 63, § 58, was $1,097.23; that the tax paid
was $5,679.68 in excess of said minimum requirement of
$1,097.23; that the average collateral mortgages, as defined
in *United States Trust Co.* v. *Commonwealth*, 245 Mass. 75,
held by said trust company for the twelve months covered
by the 1922 franchise tax amounted to $11,975; that the
tax rate for the 1922 franchise taxes was $25.20 per thousand;
that the failure to deduct the average collateral mortgages
of $11,975 augmented the tax by $301.77, this being the
so called 'first ground' of illegality; that the average savings

department mortgages secured by real estate taxable in Massachusetts for the six months ending October 31, 1921, as shown on the November, 1921, savings department return amounted to $444,215; that during that period said trust company had in its savings department 7.32656% of its average deposits, which were larger than the $2,000 limit imposed upon deposits in savings banks as the law then stood; that a corresponding percentage of the total savings department mortgages secured by real estate taxable in Massachusetts amounted to $32,545.68 for the first six months of the franchise tax year of 1922; that for the twelve months covered by the 1922 franchise tax the average corresponding percentage of the average of such mortgages was $28,422.20; that the latter sum multiplied by the tax rate of $25.20 shows that the franchise tax was augmented in the sum of $716.24 by the failure to deduct said mortgages in making the franchise tax assessment, this being the so called 'second ground' of illegality."

The petitioner contended that, from the findings by the auditor above quoted, "$28,422.20 of the average mortgages held in the savings department were never used as a deduction in assessing the savings department tax (due to the application of the apportionment rule laid down in *Old Colony Trust Co.* v. *Commonwealth*, 220 Mass. 409, 412–413), and therefore should have been used as a deduction from the franchise tax. The failure so to use them unlawfully augmented the franchise tax by $716.24 and constitutes the 'second ground' of illegality."

Other material facts found by the auditor and contentions by the parties are stated in the opinion. The suits were heard by *Wait*, J., who found the facts as reported by the auditor and ruled as follows:

"The action of the commissioner under St. 1922, c. 382, involves the exercise of discretion beyond the mere determination of an amount. For this reason, mandamus will not lie.

"Failure on the part of a taxpayer to act under G. L. c. 63, § 77, taken wholly by itself, is not a valid reason for refusal on the part of the commissioner to act under St. 1922, c. 382; but, taken with the many things to be considered by

the commissioner in deciding whether to act under that statute, it may well be made a condition of his action. The commissioner may be exercising a sound discretion in requiring that G. L. c. 63, § 77, shall have been complied with, before, in any case, he will consider favorably an application under St. 1922, c. 382. A general rule to that effect is consistent with the provision that the act is "in addition to and not in modification of any other remedies"; and does not render St. 1922 nugatory.

"If the decision upon this petition rested in my discretion, I should allow the writ to issue, since money obtained by an illegal tax is being withheld by the Commonwealth. As it does not, I must order that the writ be denied."

The petitioner alleged exceptions.

Material statutory provisions were as follows:

G. L. c. 58, § 27, as amended by St. 1922, c. 382:

"If it shall appear that an income tax, a legacy and succession tax, or a tax or excise upon a corporation, foreign or domestic, was in whole or in part illegally assessed or levied, or was excessive or unwarranted, the commissioner may, with the approval of the Attorney General, issue a certificate that the party aggrieved by such tax or excise is entitled to an abatement, stating the amount thereof. If the tax or excise has been paid, the State treasurer shall pay the amount thus certified in such manner as the certificate shall provide, without any appropriation therefor by the General Court. No certificate for the abatement of any tax or excise shall be issued under this section unless application therefor is made to the commissioner within two years after the date of the bill for said tax or excise, or for an amount exceeding the sum which in equity and good conscience ought to be abated under all the circumstances of the case. In issuing certificates hereunder, the commissioner and Attorney General may, if they deem it expedient, equalize the burden of repayment by providing in the certificate for postponement of payment, or for payment by instalments. The decision of the commissioner and Attorney General shall be final. The State treasurer shall retain from the sums next to be distributed to any city or town under sections eighteen

to twenty-four, inclusive, an amount equal to the sum which has already been paid to such city or town on account of any tax or excise refunded under this section.   This section shall be in addition to and not in modification of any other remedies."

G. L. c. 63, § 11, as amended by St. 1922, c. 520, § 2: "Every savings bank and every trust company having a savings department, as defined respectively in chapters one hundred and sixty-eight and one hundred and seventy-two, shall pay to the commissioner, on account of its depositors, an annual tax of one half of one per cent, which shall be levied on the amount of the deposits in a savings bank, and on the amount of such of the deposits in the savings department of a trust company as do not exceed in amount the limits imposed upon deposits in savings banks by section thirty-one of chapter one hundred and sixty-eight, to be assessed and paid as follows: one fourth of one per cent shall be assessed by the commissioner upon the average amount of such deposits for the six months preceding May first, and paid on or before May twenty-fifth; and a like percentage shall be assessed upon the average amount of such deposits for the six months preceding November first, and paid on or before November twenty-fifth."

G. L. c. 63, § 12: "So much of said deposits shall be exempt from taxation under the preceding section as is invested in any of the following: . . . .

"(b) Loans secured by mortgage of real estate taxable in this Commonwealth. . . . "

G. L. c. 63, § 14: "No investment of deposits in the savings department of any trust company exempt in any year from the tax imposed by section eleven shall be in the same year a basis for any deduction allowed in computing any other tax which trust companies are required by law to pay."

G. L. c. 63, § 55: "The commissioner shall ascertain from the returns or otherwise the true market value of the shares of each corporation required to make a return under section fifty-three or fifty-four, and shall estimate therefrom the fair cash value of all the shares constituting its capital stock on April first preceding, which, unless by the charter of a cor-

poration a different method of ascertaining such value is provided, shall, for the purposes of this chapter, be taken as the true value of its corporate franchise. From such value there shall be made the following deductions: . . .

"Fifth. In case of corporations subject to section fifty-three or fifty-four, other than railroad, telegraph, telephone, street railway and electric railroad corporations or companies, the value as found by the commissioner of their works, structures, real estate, machinery, poles, underground conduits, wires and pipes, subject to local taxation wherever situated. . . ."

The case was argued at the bar in March, 1926, before *Rugg*, C.J., *Crosby*, *Pierce*, *Carroll*, & *Sanderson*, JJ., and afterwards was submitted on briefs to all the Justices except *Wait*, J.

*J. E. Perry*, for the petitioner.

*A. Lincoln*, Assistant Attorney General, for the respondent.

*P. Nichols*, by leave of court submitted a brief as *amicus curiae*.

CROSBY, J. This is a petition for mandamus to compel the respondent to submit to the Attorney General for approval a certificate of abatement of a tax under G. L. c. 58, § 27, as amended by St. 1922, c. 382. The case was heard by a single justice upon the petition, answer, and the report of an auditor appointed to find the facts and report the same to the court. This case and twenty-two others were consolidated, by order of the court, and tried together. The single justice found the facts as reported by the auditor, and disposed of the case as follows: "If the decision upon this petition rested in my discretion, I should allow the writ to issue, since money obtained by an illegal tax is being withheld by the Commonwealth. As it does not, I must order that the writ be denied." We construe this statement as a ruling of law that the tax assessed and paid was in part at least illegal, but that the court had no power to order the issuance of the writ.

We consider first whether the tax assessed was excessive and unlawful. The petitioner contends that it was unlawful upon two grounds. Each of the petitioners is a trust com-

pany organized under the laws of the Commonwealth, and having in addition to its commercial department a savings department. It is found by the auditor that, in estimating the fair cash value of all the shares of capital stock of the petitioners for the purpose of levying the franchise tax upon their several franchises, mortgages of real estate taxable in this Commonwealth to the extent of the loans which they secured collaterally were not deducted under G. L. c. 63, § 55, Fifth, as real estate subject to local taxation. This court has recently decided that under that statute such mortgages to the extent of the loans of the trust company which they secure collaterally must be deducted as real estate. *United States Trust Co.* v. *Commonwealth,* 245 Mass. 75.

The second ground upon which it is contended that the tax was illegally assessed is that the commissioner erred in failing to deduct the average amount of the deposits in excess of $2,000 in the petitioner's savings departments invested in loans secured by mortgages on real estate taxable in this Commonwealth under the provisions of G. L. c. 63, § 11. This question has never been decided by the court. The petitioner contends that the average amount of deposits in excess of $2,000 so invested should have been deducted under § 55.

G. L. c. 63, § 14, provides that "No investment of deposits in the savings department of any trust company exempt in any year from the tax imposed by section eleven shall be in the same year a basis for any deduction allowed in computing any other tax which trust companies are required by law to pay." The respondent contends that by the enactment of this statute the Legislature intended that investment of deposits in the savings department which belonged to the class exempted by § 12 should not be deductible under § 55. The tax authorized by § 11 was a tax on the deposits "as do not exceed in amount the limits imposed upon deposits in savings banks by section thirty-one of chapter one hundred and sixty-eight"; namely, deposits each of which did not exceed in amount the sum of $2,000.* The exemption provided for in § 12 (b) relates to "Loans secured by mortgage

---

* The limit so stood at the time, 1922, to which this petition relates. By St. 1924, c. 67, § 1, it was changed to $3,000.

of real estate taxable in this Commonwealth." Both § 11 and the exemption provided in § 12 applied only to deposits not in excess of $2,000. By § 12 the petitioner was not entitled to any exemption for deposits in excess of that amount. Under § 55, Fifth, in the light of § 14, so much of every deposit in excess of $2,000 in the petitioner's savings department as was invested in mortgages of real estate in this Commonwealth should have been deducted as real estate subject to local taxation in assessing the petitioner's franchise tax. *United States Trust Co.* v. *Commonwealth, supra.* See *Old Colony Trust Co.* v. *Commonwealth,* 220 Mass. 409.

The questions, whether under the statute the petitioners severally made application for the correction and abatement of the tax assessed and whether it was the duty of the respondent to consider such applications, remain to be considered. The auditor found that the applications were made more than six months after the payment of the tax but before the expiration of two years from the date of the tax bills rendered; also, that "the respondent, in accordance with his general practice, denied the petitioners' applications for abatement and . . . his failure to grant relief was due solely to the fact that the applications were not filed within six months after the date of payment of the tax bills rendered, and that in refusing to grant relief he followed his usual custom in cases where petitioners have lost their legal rights by failure to bring suit within the statutory limit of time, in the exercise of the discretion, as he claims, granted to him" by G. L. c. 58, § 27, as amended by St. 1922, c. 382. We construe this finding to mean that the commissioner believed the taxes assessed were in part at least illegal, and that his sole ground for denying the applications for abatement was that they were not filed within six months after the date of payment of the tax bills rendered as provided by G. L. c. 63, § 77.

The statute under which the applications were made and under which he was empowered to act, (G. L. c. 58, § 27, as amended by St. 1922, c. 382,) provides that "No certificate for the abatement of any tax or excise shall be issued under

this section unless application therefor is made to the commissioner within two years after the date of the bill for said tax or excise . . . ."   The franchise tax assessed to the petitioners was levied and assessed on the sworn returns made by them respectively as of April 1, 1922, in accordance with G. L. c. 63, as amended, and bills for said tax were dated September 20, 1922, and were duly paid on or before October 20, 1922, their due date.   It thus appears that the statutory period for making applications for abatement was cut down by the commissioner from two years after the date of the tax bill to about seven months.   We are of opinion that the construction of the statute by the commissioner and of his duties thereunder was erroneous.   The two years after the date of the tax bills in which applications could be made could not be limited or shortened by the commissioner.   At any time within that period an applicant was entitled to apply for an abatement.

The statute provides in substance that, if the tax was in whole or in part illegally assessed or levied, or was excessive or unwarranted, "the commissioner may, with the approval of the Attorney General, issue a certificate that the party aggrieved by such tax or excise is entitled to an abatement, stating the amount thereof."   The respondent contends, and the single justice ruled that the authority so vested in the commissioner is discretionary not only as to the determination of amount to be abated, but upon the question whether, even if it should appear that the tax sought to be abated was in whole or in part illegally assessed or levied or was excessive or unwarranted, an abatement should be granted. The word "may" ordinarily construed is permissive and not mandatory.   In the construction of statutes when applied to a public officer in connection with a duty to be performed it is construed as "must" or "shall," if such appears to have been the intention of the Legislature.   *County of Worcester* v. *Schlesinger,.* 16 Gray, 166, 168.   *Bay State Street Railway* v. *Woburn,* 232 Mass. 201, 203.   It was said in *Commonwealth* v. *Mekelburg,* 235 Mass. 383, at page 384, "In the construction of statutes the rule seems to be that the word 'may' means 'must' or 'shall' only in cases where the public

interest is concerned, or where the public or third persons have a claim *de jure* that the power should be exercised." When a statute directs the doing of an act by a public officer in the interest of justice or the public good, the word "may" is to be construed as "shall." When a power is given to public officers and the public interest or individual rights call for its exercise, the language, although permissive in form, is in fact peremptory. What such officers are authorized to do for a third person the law requires shall be done. *People* v. *Otsego County Supervisors,* 51 N. Y. 401. *Supervisors* v. *United States,* 4 Wall. 435, 446, 447. *Galena* v. *Amy,* 5 Wall. 705. *Mason* v. *Fearson,* 9 How. 248, 259, 260. *United States* v. *Cornell Steamboat Co.* 137 Fed. Rep. 455. *Maryland* v. *Miller,* 194 Fed. Rep. 775. *Michaelson* v. *United States,* 266 U. S. 42, 70. *Mayor of New-York* v. *Furze,* 3 Hill, (N. Y.) 612.

By the enactment of G. L. c. 58, § 27, as amended by St. 1922, c. 382, the obvious purpose of the Legislature was to relieve from the consequences of taxes or excises in whole or in part illegally assessed or paid. When it appears to the commissioner that an income tax, a legacy and succession tax, or a tax or excise upon a corporation, foreign or domestic, was in whole or in part illegally assessed or levied, or was excessive or unwarranted, the statute requires him with the approval of the Attorney General to issue a certificate that the party aggrieved by such tax or excise is entitled to an abatement, stating the amount thereof, which amount shall not exceed the sum "which in equity and good conscience ought to be abated under all the circumstances of the case." The statute also expressly provides that the remedy therein given "shall be in addition to and not in modification of any other remedies." If, through ignorance or mistake of an individual or of the officers of a corporation in the tax return or through an error of the department of corporations and taxation in computing the amount of an income, legacy or succession tax or a tax or excise upon a corporation, an excessive or illegal tax is levied and assessed, the Legislature by the enactment of this statute intended that it should be corrected by the commissioner with the approval of the

Attorney General.  The end sought to be accomplished is undoubtedly in the interest of manifest justice.  Neither an individual nor a corporation should be obliged to pay, nor should the Commonwealth be required to accept or retain, taxes which are in whole or in part unlawfully levied or assessed.

When the time for making applications under the statute was definitely fixed at two years from the date of the tax bill, it was intended that the time should be extended for making the application for an abatement which before the adoption of the amendment was limited to six months after the payment of the tax.  G. L. c. 63, § 77.

The failure of the commissioner to grant relief in these cases solely on the ground that the applications were not filed within six months after the date of payment of the tax bills rendered, and his refusal to grant relief following his usual custom in cases where petitioners have lost their legal rights by failure to bring suit within the statutory limit of time as provided in G. L. c. 63, § 77, were erroneous.  It is well settled in this Commonwealth and elsewhere, "that the Legislature cannot delegate the general power to make laws, conferred upon it by a constitution like that of Massachusetts."  *Brodbine* v. *Revere*, 182 Mass. 598, 600.  The statute in question did not authorize the commissioner to change a general law enacted for the benefit of all the people and of corporations subject to taxation in this Commonwealth.  We are constrained to hold that the refusal of the respondent to act upon the applications of the petitioners solely for the reason given was unwarranted and illegal; that mandamus will lie is well settled in principle by the cases already cited.  *French* v. *Jones*, 191 Mass. 522.  *Keough* v. *Aldermen of Holyoke*, 156 Mass. 403.  *McLean* v. *Mayor of Holyoke*, 216 Mass. 62.  *Burke* v. *Holyoke Board of Health*, 219 Mass. 219.  *Wyeth* v. *Cambridge Board of Health*, 200 Mass. 474.  See also *Welch* v. *Swasey*, 193 Mass. 364, 377; *Garfield* v. *Goldsby*, 211 U. S. 249, 262; *Work* v. *Rives*, 267 U. S. 175.  It was said by Chief Justice Knowlton in *Wyeth* v. *Cambridge Board of Health*, *supra*, at pages 481, 482, that "The report is equivalent to a finding upon the answer and the facts

agreed that the only reason for the respondents' refusal was that the petitioner was not licensed as an embalmer, and that, except for this, the respondents in the exercise of their judgment and discretion would have granted the license. Upon these facts nothing remains but to enter the order."

The provision of the statute (St. 1922, c. 382,) that "the decision of the commissioner and Attorney General shall be final," does not make the commissioner's decision final where as in the present case questions of law apparent on the record are involved. *Swan.* v. *Justices of the Superior Court*, 222 Mass. 542. *Bogigian* v. *Commissioner of Corporations & Taxation*, 248 Mass. 545, 548. Nor does it permit the commissioner in his discretion to refuse to consider an application for the abatement in whole or in part of a tax illegally assessed, on the sole ground that the application was not filed within six months from the date of the payment of the tax. To hold otherwise would defeat the result sought to be accomplished by the statute. The single justice in his "finding and order" states in substance that if he had discretion to do so he would allow the writ to issue "since money obtained by an illegal tax is being withheld by the Commonwealth," but that whether the commissioner should consider the applications rested in his own discretion, and for that reason the writ should be denied. This was a ruling of law, and as it was erroneous the exceptions must be sustained. It was the duty of the respondent to consider the applications for abatement and, if it should appear that the tax or excise assessed or levied against the petitioners or either of them was in whole or in part illegally assessed or levied, or was excessive or unwarranted, to submit a certificate setting out the grounds on which it is based for the approval of the Attorney General, stating the amount for which the petitioners in equity and good conscience are entitled to an abatement.

*Exceptions sustained.*