MOTORCOACH OPERATORS ASS'N v. BOARD OF STREET RAILWAY COMMISSIONERS OF THE CITY OF DETROIT.

1. Statutes—Intent of Legislature Controlling.

The intention of the legislature is controlling in the determination of whether the provisions of a statute are directory or mandatory.

2. Municipal Corporations—Charters—Labor Disputes—Arbitration.

Charter provision as to arbitration of disputes over wages or conditions of employment by board of street railway commissioners *held*, not intended to be mandatory, where it was conditioned upon advance agreement by each party to bear half the expense and charter provided no machinery for effecting execution of such power (Detroit charter, title 4, chap. 13, § 19).

3. Master and Servant—Arbitration—Seniority Rights.

Arbitration of seniority rights between motorcoach operators and street car employees may not be compelled by mandatory injunction against board of street railway commissioners (Detroit charter, title 4, chap. 13, § 19).

Appeal from Wayne; Murphy (Thomas J.), J. Submitted April 10, 1934. (Docket No. 74, Calendar No. 37,612.) Decided June 4, 1934. Rehearing denied September 18, 1934.

Bill by Motorcoach Operators Association, a Michigan corporation, and others against Board of Street Railway Commissioners of the City of Detroit and others to compel arbitration of seniority rights. Henry L. Mundt intervened as a party defendant. Bill dismissed. Plaintiffs appeal. Affirmed.

*Edward N. Barnard,* for plaintiffs.

*Clarence E. Page* and *James S. Shields* (*Raymond J. Kelly* and *Rodney Baxter,* of counsel), for defendant Board of Street Railway Commissioners.

*Sempliner, Dewey, Stanton & Honigman,* for defendant Amalgamated Association of Street & Electric Railway Employees of America, Local No. 26.

BUTZEL, J. A controversy arose between the board of street railway commissioners of the city of Detroit and two sets of employees as to the proper rule of seniority in employment. Under previous regulations, there had existed two separate and distinct systems of seniority, one applicable to the motorcoach drivers exclusively, the other applicable to those engaged in the operation of street cars. Thus, in so far as employment on the motorcoach lines was concerned, motorcoach operators were granted a preference over employees in the street car service, length of service on the bus lines being determinative, rather than length of service in the street railway department in general. Subsequently, however, the defendant board determined to effect a change in the seniority systems, by which

the classification between the two groups of employees would be abolished. The contemplated change became particularly important in view of the fact that business conditions necessitated a reduction in the number of employees throughout the transportation system. As a result of the proposed abolition of the classification between the two groups, employees whose length of service in the operation of street cars might exceed that of employees serving as motorcoach operators would be given priority and preference by the board in deciding which employees to retain and which to discharge in the event of a reduction in the personnel of the entire system. The Motorcoach Operators Association, consisting of some 600 employees, plaintiffs herein, objected to the proposed change, and demanded that the question be submitted to arbitration.

Title 4, chap. 13, § 19, of the charter of the city of Detroit, referring to the board of street railway commissioners of that city, provides as follows:

"In case of dispute over wages or conditions of employment, said board is hereby authorized and directed to arbitrate any question or questions, provided each party shall agree in advance to pay half of the expense of such arbitration."

The commissioners at first favored arbitration, but subsequently deemed it inadvisable, and refused to appoint an arbitrator or to proceed with the arbitration. The Motorcoach Association and a number of the employees accordingly filed a bill of complaint, seeking a mandatory injunction to compel the board of street railway commissioners of the city of Detroit, its members, and the Amalgamated Association of Street & Electric Railway Employees of America, Local No. 26, to submit the question to

arbitration. An additional defendant also intervened. The trial judge denied the injunction, holding that the charter provision in regard to arbitration was merely permissive or directory, and not mandatory. The correctness of this ruling is the sole question in the case.

In determining whether the provisions of a statute are directory or mandatory, the intention of the legislature controls. *Bowman* v. *Wayne Circuit Judge*, 214 Mich. 518; *Smith* v. *School District No. 6, Fractional, Amber Township*, 241 Mich. 366. It is undoubtedly true that arbitration is a proper and rational method for the solution of controversies between employer and employee, and present-day courts widely encourage its use. It is also true that when a statute confers a power upon a corporation, to be exercised for the public good, the exercise of such power is commonly held to be not merely discretionary, but mandatory. *Attleboro* v. *Commissioners of Corporations & Taxation*, 257 Mass. 43 (153 N. E. 333); *Fidelity & Casualty Co. of New York* v. *Brightman* (C. C. A.), 53 Fed. (2d) 161; 2 Lewis' Sutherland, Statutory Construction (2d Ed.), § 636, p. 1150.

However, the wording of the proviso in the quoted section of the charter in the instant case plainly shows that there was no intent to make the resort to arbitration mandatory upon the board. Under the charter the board is authorized to arbitrate only "provided each party shall agree in advance to pay half the expense of such arbitration." The power of the board to arbitrate is thus made dependent upon its own agreement to perform a condition precedent to the arbitration, a clear indication that arbitration was required only when the board, in its own discretion, believed such a course to be advisable. Plaintiffs contend that the

proviso should be interpreted as if it stated, "Provided that the party desiring arbitration agrees to pay half the expenses." This, however, is not the language of the charter, and if such had been the intention of those who framed it, they could very easily have inserted language to that effect. The very situation that arose in the instant case, where the parties in dispute involved two opposing groups of employees, as well as the employer, might make a resort to arbitration highly inadvisable. Even had the board of street railway commissioners agreed to settle the dispute by that method, the defendant Amalgamated Association of Street & Electric Railway Employees, being well satisfied with the original action of the board, might have withheld itself from the arbitration by refusing to pay its share of the expenses, thus creating the possibility of further confusion and dissension in the event that the arbitration resulted in a reversal of the board's resolution.

Furthermore, it is significant that the charter makes no provision whatsoever as to the machinery or method of procedure for such arbitration. It neither specifies the number of arbitrators to be chosen, nor the manner of their selection, nor whether a majority or unanimous award is required, nor whether such award is to be final and binding or merely advisory, or, if binding, for what length of time. It is true that in *Stern Co.* v. *Friedman,* 229 Mich. 623, where a lease gave the lessee the option to renew at the end of the term at a rental "to be agreed upon between the parties hereto or determined by arbitration," we held that the mere failure of the parties to stipulate as to the manner in which such arbitration should be carried out did not make the contract too indefinite to afford relief

in damages for a breach thereof, since the rent was merely incidental to the lessee's clear contractual right to continue in possession after having exercised its option to renew. This is far different from the instant case, where the sole question is whether the charter provision relative to arbitration was intended to be mandatory or directory. The total failure of those who framed the charter to set up any requirement as to the manner in which the board shall effect such arbitration points strongly to the conclusion that they did not intend arbitration to be mandatory upon the board.

In *Binney* v. *Chesapeake & Ohio Canal Co.*, 8 Pet. (33 U. S.) 201, a public utility corporation chartered by the State legislature was empowered to provide navigation by the construction of canals, and to acquire land and water rights incidental thereto. Under the charter the corporation was "empowered and directed" to enter into reasonable agreements with the proprietors of adjoining land by which the latter would be permitted to use the surplus water admitted into such canals. The question arose as to whether the use of the term "directed" made it mandatory upon the corporation to enter into such agreements. The court held as follows:

"Much stress has been laid on the word 'directed,' as used in the statute. 'The company are hereby empowered and directed,' etc. The word, if standing alone, might imply something mandatory to the company. But it must be taken with the context, and the general scope and object of the provision, in order to ascertain the intention of the legislature. * * * But the whole structure of the clause shows, it was to be a voluntary and mutual agreement of the parties. It cannot be supposed that if

any compulsory measures were contemplated, the act would have been left so entirely silent, as to the mode and manner in which this was to be enforced upon the company. If, as we think, it clearly was the intention of the act that the use of the water should be subject to the mutual agreement of the parties, no legislative provision was necessary. The parties having authority to make the agreement, they could make it, in any manner, or under such modifications as they might think proper.

"It is not a well-founded objection to this construction of the act, that the most apt and appropriate phraseology to convey this meaning, has not been employed. The great object is, to ascertain the intention of the legislature; and there is certainly nothing in the language used, that is repugnant to the construction we have adopted.

"If the right of the appellant to compel the company to make the agreement, was clearly established, it might be within the province of a court of chancery, to enforce the consummation of such agreement, and carry it into effect. But the entire absence of any provision looking to compulsory measures, as to the mode and manner in which the agreement is to be made or executed, is a very strong, if not conclusive reason to show that no such right exists; and leads irresistibly to the conclusion, that this is a matter left open for the voluntary arrangement of the parties."

The trial judge correctly refused to grant plaintiffs the relief prayed for, and the decree dismissing the bill is affirmed, but without costs, the question being a public one.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, and Edward M. Sharpe, JJ., concurred. Bushnell, J., did not sit.