## Ex Parte PERKINS, ON APPLICATION FOR A WRIT OF HABEAS CORPUS.

WHERE, in the regular course of judicial proceedings before a Court of general jurisdiction, a party, having notice of the proceedings, has been ordered by the judgment of the Court to pay a certain sum of money, and in default of obedience to the order, has been committed for contempt, he cannot, on application to the Supreme Court for a writ of *habeas corpus,* question the *regularity* of the proceedings of the Court below, nor the propriety of the judgment on the facts. The *power* of the Court below to make the order is the only question.

As to the regularity of the proceedings and the propriety of the order, the Supreme Court is not an appellate Court, but a Court of original special jurisdiction to discharge the applicant when no legal cause of detention exists.

In suit for divorce the Court has power to order the husband to pay money to the wife for her support during the litigation, and for counsel fees and other legal expenses; and such order may be enforced by imprisonment for contempt in case of refusal to pay.

A sum so ordered to be paid is not a debt within that article of our Constitution which prohibits imprisonment for debt except for fraud. The husband is bound to support the wife, and this duty, though not technically a debt, is an imperfect obligation which may be enforced by order of Court compelling him to pay her money.

APPLICATION to the Supreme Court for a writ of *habeas corpus.*

R. G. Perkins, the relator, brought suit in the Third District against Elizabeth Perkins, his wife, for a divorce, on the ground of willful desertion. She answered, denying such desertion, and averring extreme cruelty on the part of plaintiff toward her and their minor children, which compelled her to leave his home with said children and live with an elder son, who has supported her; and also willful neglect to provide for her and the children the common necessaries of life, for three years, having the ability to provide the same, and praying for a divorce and division of the common property, alleged to be about $50,000, and also for an order requiring plaintiff to pay defendant five hundred dollars for counsel fees and costs, and two hundred and fifty dollars per month for the support of herself and said minor children during the suit. November 27th, 1860, before the case was tried, defendant moved the Court on affidavits—plaintiff filing counter affidavits—for an order directing plaintiff to pay defendant the counsel fees, etc., as prayed in

her answer; and the Court, after hearing the motion, " ordered, adjudged and decreed that said plaintiff pay to the said defendant the sum of four hundred dollars for counsel fees in this behalf, for her defense in said action, within ten days from the date of this order, and that, in default of the payment of the said sum of four hundred dollars, according to this order, then defendant have a writ of sequestration against the property of said plaintiff to make such sum, or such other relief as may be according to law."

The case was then tried before a jury; and issues being submitted involving the charges made in the complaint and answer, they were found against plaintiff and in favor of defendant; and a decree was accordingly rendered, on the third of December, 1860, denying plaintiff's prayer for divorce, but granting a divorce as asked by defendant, ordering an equal division of the common property, and giving the custody of the minor children to defendant. December 14th, 1860, a copy of the above order, requiring plaintiff to pay four hundred dollars counsel fees, was served on him, and demand made by defendant's agent and attorney for the money, and payment thereof refused. On the nineteenth of March, 1861, defendant moved for attachment against plaintiff for contempt in refusing to obey said order—the motion being based on affidavits setting forth the foregoing facts, and also that plaintiff is worth about $50,000, and is abundantly able to pay. Whereupon the Court issued a rule on plaintiff to show cause, on the twenty-sixth of March, why he should not be committed for contempt in refusing to obey the order to pay the counsel fees. On that day, after hearing the parties, the Court adjudged that plaintiff was guilty of contempt in refusing to pay said money; that he had still the power to pay it, and that he be imprisoned in the common jail until he pay the same. A warrant of commitment was issued, under which the Sheriff of San Francisco, where plaintiff lived, took him into custody.

Plaintiff now applies to the Supreme Court for a writ of *habeas corpus*, averring that the warrant of commitment and plaintiff's imprisonment thereunder are illegal, because: first, the facts recited in the warrant do not constitute a contempt; second, the judgment of contempt, as set forth, is *coram non judice*, and hence the

warrant of commitment is void; third, it does not appear that petitioner had his day in Court, either on a rule to show cause or attachment against his person, and hence the warrant does not show jurisdiction over the person of petitioner, and that nothing appears on the face of the writ to justify the arrest or detention of petitioner, and the same is against the Constitution of this State and of the United States; fourth, the warrant of commitment does not show the pendency of such a suit as would give jurisdiction to the Court over the person or subject matter of the contempt.

The writ was issued and made returnable before the Supreme Court. The Sheriff of San Francisco returned that he had petitioner in custody under the warrant of commitment from the Third District Court. To this return petitioner answered, setting up, among other things, that no demand for the payment of the counsel fees was ever made by defendant in person, nor was any written order for such payment ever presented, and that defendant was not therefore entitled to a judgment of default against plaintiff in accordance with the order under which these proceedings are had, and that no writ of sequestration or execution has ever been issued; that the warrant does not show that petitioner was convicted of fraud, in which case only could he be imprisoned.

*Shields & Heslep*, for Petitioner.

No points or brief on file, other than the above answer to the Sheriff's return.

*Byrne & Freelon*, contra.

1. The judgments and orders of Courts or judges on the subject of contempt are final and conclusive; and under the writ of *habeas corpus*, one Court will not interfere with the orders or judgments of another Court in such cases. (1 Kern. 324; 4 Wisc. 522; *Ex parte Cohen and Jones*, 5 Cal. 494; Hurd on Habeas Corpus, 410–413, *et seq.*, and cases cited; *People* v. *Nevins*, 1 Hill, 154; *Case of Yates*, 4 Johns. 366, 370, 372; 1 Cal. 152; 3 Hill, 663, note 38, 661, *et seq.*; 25 Miss. 883; *Ex parte. Adams*, 14 U. S. D. 114; *Jordan* v. *State*, 14 Tex. 436; Opinion of Murray, C. J., 7 Cal. 176; *Baltimore and O. R. R.* v. *Wheeling*, 13 Gratt. [Va.] 40; 17 U. S. D. 132.)

2. This Court grants the writ of *habeas corpus* as an original writ, and not in aid of its appellate jurisdiction. (Cons. Cal. art. 6, sec. 4.)

3. The Court may order counsel fees to be paid to a wife in a divorce case in which she is defendant. (Bishop on Marriage and Divorce, 571, *et seq.*; *Mix* v. *Mix*, 1 Johns. Ch. 108; 2 Barb. Ch. Pr. 265; *Ryan* v. *Ryan*, 9 Mo. 539; *McGee* v. *McGee*, 10 Ga. 477; *Melez* v. *Melez*, 1 Parsons, [Penn.] 78.)

4. The sum ordered to be paid is not a debt. (1 Burrill's Law Dic. 343; 2 Black. Com. 125; *Lyon* v. *Lyon*, 21 Conn. 185, 13 U. S. D. 131.)

5. The remedy of the party for nonpayment of money under order of a Court of Chancery, has always been by imprisonment for contempt or by sequestration. (2 Barb. Ch. Pr. 272; 2 Paige, 578; Id. 280, 698.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

The main question in this case has relation to the power of the District Court to order the applicant, plaintiff in a certain suit for a divorce below; to pay a sum of money for expenses incurred by the defendant below, the wife, in an action for divorce.

It is unnecessary to consider the facts in regard to the propriety of this charge; for, as the Court is one of general jurisdiction, it is not admissible for the defendant in a proceeding of this sort to question the mere regularity of its proceedings. We do not sit as an appellate Court upon matters of this sort, but as a Court of original jurisdiction, invested with a special jurisdiction to discharge the petitioner when no legal cause of detention exists against him. In the regular course of judicial proceedings before a Court of general jurisdiction, the petitioner, having notice of the proceedings, has been ordered by the judgment of the Court to pay a certain sum of money; and in default of obedience to the order, has been committed for contempt. The only question, therefore, which he can make, as affecting the legality of his commitment, involves *the power* of the Court to make the order. And upon this question we have no doubt. The main argument of his counsel is, that this

sum adjudged to be paid by him is a debt within the meaning of the constitutional provision; and that he cannot be imprisoned for the refusal to pay this debt, except by proof of fraud, since this would be a violation of the provision of the Constitution which secures the citizen against imprisonment for debt, except for fraud. But it is well answered that this is not a debt within the meaning of this article. The husband is bound to support the wife, yet this duty is an imperfect obligation which is not technically a debt. He does not owe her any specific amount of money, but he owes a duty to her which may be enforced by the order of a Court, compelling him to pay her money. So alimony, temporary or permanent, may be decreed by the Court, and this may be done, not in one gross sum or at one time only, but in different sums and at different times, at the discretion of the Court. Nor does this power exhaust itself by a mere provision for the actual necessary support of the wife during the litigation. But it is equally within the power of the Court to decree the payment of the legal expenses of the suit. Legal expenses may well be included in this provision, and this includes the fees to attorneys. This is not a debt, as has been decided by the Supreme Court of Connecticut in *Lyon* v. *Lyon*, 21 Conn. 185.

Prayer of the petitioner refused, and he remanded.

Subsequently, on the twentieth of April, 1861, petitioner applied to the Supreme Court for a writ of *certiorari* to the Third District Court to send up the record and proceedings in the cause, and for an order staying all proceedings upon the judgment for contempt. The petition set forth the facts as hereinbefore related, and averred, further, that, as to the order of the Court below requiring petitioner to pay the four hundred dollars counsel fees, he has lost his right to appeal; and that as to the judgment for contempt, no appeal lies; that the Court below has adjourned for the term, and therefore petitioner cannot move to vacate said order and judgment, and hence he is without a plain, speedy and adequate remedy, unless this Court will review the proceedings of said Third District Court.

Upon this petition the Supreme Court ordered that defendant, Elizabeth Perkins, show cause why the writ should not issue.

By stipulation this application was heard upon the record in the preceding application for a writ of *habeas corpus*, defendant also filing an affidavit not necessary to be noticed.

*Shields & Shearer*, for the Writ.

I. No appeal lies from the order requiring petitioner to pay counsel fees. (Wood's Dig. 210, art. 1070, sec, 336; Id. 920, art. 113.) It was an order *pendente lite*, and therefore interlocutory. (*Loring* v. *Illsley*, 1 Cal. 439; *People* v. *Thurston*, 5 Id. 517; *DeBarry* v. *Lambert*, 10 Id. 503; *Baker* v. *Baker*, Id. 527.)

II. This order was irregular. The Court can decree support *pendente lite*, and in this support embrace an allowance for counsel fees—but cannot decree payment to the wife of a specified amount for counsel fees, or render distinct decrees for specific sums to different parties. But if an allowance were made for her counsel fees, the wife would become a trustee, the counsel the beneficiary.

The Court has already decided that an allowance of alimony is not a debt of the husband within the meaning of the Constitution. It is a portion of the husband's estate, allowed for the wife's support. Now, alimony is of two kinds: first, an ascertained allowance of money to come out of the estate; second, a portion of the estate or property to be set apart to the wife for her separate use—the first generally pending the litigation, the last after final decree. Both are in this alike, that they depend upon the amount and value of the husband's property. Alimony should be made primarily out of the husband's property. (*Brown* v. *Ackroyd*, 34 Eng. L. & E. 214–217.) The allowance is a charge against the husband, and must be realized out of his estate, as any other demand against him, by a civil proceeding, and not by a proceeding of a *quasi* criminal nature. (*Baltimore and O. R. R.* v. *Wheeling*, 13 Gratt. [Va.] 40.) As it is not a charge against his person, no resort can be had against his person before execution against his property, or sequestration of it, and a return of the process unsatisfied; and then not until a conviction of fraud, or improper practices in relation to his estate, of which he has the control and management.

In *Lyon* v. *Lyon*, (21 Conn. 185) cited by this Court in its decision in *Perkins on Habeas Corpus* at this term, the application was made for an attachment against the party after final judgment, and in support of the application it was alleged, not only that he had refused payment, but that he had " concealed and fraudulently disposed of his property to evade payment." A divorce had been already granted, and alimony decreed, and the allowance was ascertained after the decree, supplementary to it, and was for permanent alimony.

The whole proceeding is *coram non judice*, and a nullity. Unde the order to show cause, the Court had no more power to convict of contempt than it had to adjudge him guilty of a felony; and the commitment being illegal, this Court will discharge the person. (*Ex parte Beatty*, 12 Wend. 232.)

*Byrne & Freelon*, contra, argued that the former decision of this Court on *habeas corpus* covered the present application:

COPE, J. delivered the opinion of the Court—BALDWIN, J. concurring.

This is an application for a *certiorari*. The opinion delivered at the present term, refusing to discharge the applicant upon a writ of *habeas corpus*, is decisive of the points involved in this application.

Writ denied, and petition dismissed.