BEATRIZ B. VILLA, peticionaria, *v.* LA CORTE DE DISTRITO DE SAN JUAN, HON. PABLO BERGA, JUEZ, demandada.

No. 932.—*Sometido:* Noviembre 27, 1933. *Resuelto:* Diciembre 11, 1933.

*V. Géigel Polanco*, abogado de la peticionaria; *W. P. Colberg*, abogado del demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En abril de 1932 la peticionaria Beatriz B. Villa interpuso demanda contra su esposo Mariano Verdejo, ante la Corte de Distrito de San Juan, en solicitud de alimentos provisionales de acuerdo con la Ley sobre Procedimientos Legales Especiales de 9 de marzo de 1905. Se alegó en la demanda que el demandado voluntariamente abandonó a su esposa, la demandante, permaneciendo separado de ella desde el 18 de abril de 1928. Se alegó además que la demandante carece de bienes de fortuna y recursos económicos para sufragar los gastos de sus alimentos. La corte inferior dictó sentencia declarando con lugar la demanda, y condenando al demandado Mariano Verdejo a pagar a la demandante la cantidad de $18 mensuales por vía de pensión alimenticia, que debería depositar en la secretaría de la corte dentro de los cinco primeros días de cada mes. El pronunciamiento de la corte inferior ha quedado hasta la fecha incumplido. El demandado no ha satisfecho ni en todo ni en parte el importe de la pensión alimenticia concedida por la sentencia. En vista de esta actitud, la demandante solicitó que la desobediencia del demandado al mandato judicial fuese castigada por desacato. Oídas las partes, la corte inferior se declaró sin autoridad para imponer un castigo al referido demandado, basándose en las siguientes razones:

(*a*) Porque el artículo 240, inciso 3°., del Código de Enjuiciamiento Civil establece que cuando la sentencia condena

al pago de una cantidad de dinero, el procedimiento para obtener su efectividad es el de ejecución de los bienes del demandado, a cuyo efecto se expedirá el correspondiente mandamiento.

(*b*) Porque en ninguna de las disposiciones del Código Civil existe la menor indicación que autorice un castigo por desacato a la desobediencia de una sentencia por alimentos y en el sistema jurídico de que tal código formaba parte no existía el remedio que aquí se solicita.

(*c*) Porque no se trata de una orden concediendo alimentos en un pleito de divorcio, sino de una sentencia firme en un juicio sobre alimentos provisionales, que para su ejecución tiene un procedimiento establecido en el mismo Código de Enjuiciamiento Civil.

(*d*) Porque si pudiera seguirse el procedimiento de desacato se estaría estableciendo un delito donde sólo existe una obligación civil.

■■ Alega la peticionaria que la corte inferior cometió error al dictar su resolución y al no obligar al demandado Mariano Verdejo a cumplir la sentencia sobre alimentos provisionales mediante el procedimiento de desacato, entre otras razones porque los tribunales de distrito tienen facultad para castigar por desacato la desobediencia de una orden disponiendo el pago de una pensión alimenticia, tanto cuando la orden se dicta como incidencia de un pleito de divorcio como cuando se decreta en una acción independiente de alimentos, especialmente cuando esta última se establece de acuerdo con el procedimiento sumario y ejecutivo que la ley autoriza, como ocurre en el caso de autos.

Cita la peticionaria en apoyo de su contención el caso de *López* v. *Corte de Distrito de Guayama,* 31 D.P.R. 144 y 145, donde se establece el principio de que las cortes tienen facultades para castigar por desacato la desobediencia a una orden concediendo alimentos. En la opinión de la corte se cita una sentencia de la Corte de Distrito de Arecibo dictada en 1903. En dicho caso la corte de distrito dice que

cuando el Congreso dió a Puerto Rico un sistema de leyes referente a matrimonio y divorcio, existió claramente la intención de que estas leyes se parecieran, en teoría y método, a las vigentes en los Estados Unidos, y que debieran ser administradas y llevadas a efecto de acuerdo con los principios de la jurisprudencia americana e interpretadas de la misma manera. También dijo la corte que según la jurisprudencia americana, el método más prominente de obligar al pago de la pensión alimenticia es mediante un proceso por desacato. No aceptó esta Corte Suprema el criterio de la Corte de Distrito de Arecibo, cuya sentencia fué revocada en el caso de *Frau* v. *Canals*, 8 D.P.R. 120. Refiriéndose al criterio sostenido por la Corte de Distrito de Arecibo, dijo esta corte en el caso de *López* v. *Corte de Distrito,* supra:

"La teoría sustentada por la Corte de Distrito de Arecibo en 1903 pudo ser prematura, pero los principios siempre subsisten; y cuando se fundan en una teoría realmente humana, tienen que prevalecer. La ejecución para que se haga efectiva una orden sobre alimentos es más o menos dilatoria, su dilación traería graves injusticias, porque se trata de alimentos, y su negación, como necesidad perentoria que no admite prórroga, afectaría la vida misma de las personas necesitadas; lo cual sería tanto más lamentable y reprochable cuando en el matrimonio existe prole."

Admite la representación de Mariano Verdejo que el castigo por desacato procede cuando se trata de una orden concediendo alimentos dentro de un pleito de divorcio como ocurrió en el caso de *López* v. *Corte de Distrito,* supra, pero no en una acción independiente, ya que cuando se solicitan alimentos dentro de un pleito de divorcio la resolución de la corte concediéndolos es una orden y no una sentencia, que cae dentro de las disposiciones de los artículos 28 y 29 del Código de Enjuiciamiento Civil.

Ciertamente, no se trata en este caso de una orden *pendente lite* en un pleito de divorcio. La acción promovida por la Sra. Villa se limita a reclamar alimentos, sin solicitar la disolución del vínculo matrimonial. La cuestión a decidir

es si en vista de la naturaleza de la reclamación y de las innovaciones introducidas en la organización y estructura de nuestros tribunales de justicia, están estos tribunales autorizados para castigar por desacato la desobediencia a un decreto concediendo alimentos en un procedimiento ajeno a la acción de divorcio. Es cosa sabida que desde el cambio de soberanía nuestros tribunales han sufrido innovaciones trascendentales. En realidad los tribunales antiguos han sido sustituídos por otros tribunales de nueva creación, con diferente estructura y diferente organización. Cuando ocurrió el cambio de soberanía regía en Puerto Rico la ley orgánica del poder judicial, a cuyo amparo estaban constituídos los tribunales del país. Estos tribunales continuaron funcionando bajo la misma organización, con sus juzgados de primera instancia y la antigua Audiencia Territorial, con las funciones y poderes conferidos por las leyes entonces en vigor. La Orden General No. 19, autorizada por el General John R. Brooke, habla por primera vez de la suprema corte de justicia, compuesta de siete magistrados con facultades para oír todas las apelaciones pendientes y que pudieran establecerse en el futuro bajo las leyes de procedimientos civiles y criminales y cuya decisión correspondía a la Corte Suprema de Madrid.

La Orden General No. 118, de 15 de agosto de 1899, reorganizando el sistema judicial de Puerto Rico, constituyó un Tribunal Supremo compuesto de un presidente y cuatro jueces asociados, que reunidos formaban su sala de justicia para conocer en grado de casación todos los asuntos civiles y criminales. La Isla quedó dividida en cinco distritos judiciales, estableciéndose una corte de distrito en cada uno, compuesta de tres jueces para decidir asuntos civiles y criminales. También se establecieron cortes municipales en cada distrito municipal. La Ley Orgánica de Puerto Rico, aprobada por el Congreso en 1900, dejó subsistentes las cortes creadas por la Orden General No. 118, concediendo a la Asamblea Legislativa autoridad para legislar de tiempo

en tiempo, conforme tenga por conveniente, con referencia a dichas cortes, y cualesquiera otras que estimare oportuno establecer, su organización, el número de jueces y empleados para cada una, su jurisdicción, sus procedimientos, y demás asuntos que las afecten. Esta ley confirió al Presidente de los Estados Unidos la facultad de nombrar los jueces del Tribunal Supremo con el consentimiento del Senado nacional. En virtud de una ley aprobada en 12 de marzo de 1903, la Corte Suprema quedó convertida en un tribunal de apelación. Dispone esta ley que la corte, en sus deliberaciones y decisiones en todos los casos civiles y criminales, no se limitará a errores de procedimiento o solamente de derecho, según fueren señalados o alegados por las partes, o según se hiciesen constar en sus exposiciones y excepciones, sino que en bien de la justicia dicha corte puede también entender en todos los hechos y procedimientos del caso tal como aparecen en autos, considerando en igual forma sus méritos para la mejor administración de la justicia y para evitar injusticias y demoras.

En 10 de marzo de 1904 fué abolida la jurisdicción llamada contencioso-administrativa, y derogada en todas sus partes la ley y reglamentos de lo contencioso-administrativo, disponiéndose que todas las reclamaciones que venían haciéndose con arreglo a dicha ley y reglamentos se llevasen a cabo en lo sucesivo utilizando la jurisdicción ordinaria y por los trámites establecidos en la nueva Ley de Enjuiciamiento Civil, que fué aprobada en la misma fecha. También se aprobó con la misma fecha la ley reorganizando el sistema judicial que dividió la Isla en siete distritos judiciales, con una corte en cada distrito, presidida por un juez. La Ley de Enjuiciamiento Civil, en sus títulos I y II, determina las facultades de las cortes de justicia y de los funcionarios judiciales.

Basta lo dicho para demostrar que nuestros tribunales de justicia han sufrido alteraciones transcendentales desde el cambio de soberanía. Los antiguos juzgados de primera instancia e instrucción han sido sustituídos por las cortes de

distrito, y la antigua Audiencia Territorial por esta Corte Suprema. El juicio oral y público se hizo extensivo a los casos civiles y los tribunales de jurisdicción general quedaron facultados para expedir autos de hábeas corpus, *certiorari, injunction,* inhibitorios y *mandamus.* En realidad se ha creado un nuevo sistema judicial, que en nada se parece al sistema abolido y que está calcado en el sistema norteamericano, con algunas variantes, como, por ejemplo, el juicio por jurado en casos civiles, que no ha sido establecido en Puerto Rico. En cuanto a facultades, nuestros tribunales tienen, además de las que expresamente les confiere la ley, aquéllas que son inherentes a un tribunal de justicia. Las cortes de distrito y la Corte Suprema son tribunales de récord. Los antiguos comentaristas del derecho común nos dicen que una corte de récord es aquélla que tiene poderes para castigar v encarcelar por desacato a su autoridad y donde los actos y procedimientos judiciales se hacen formar parte de un legajo que se conserva a perpetuidad.

De acuerdo con la ley definiendo el delito de desacato y disponiendo la pena correspondiente, aprobada en 1902, podrá castigarse por desacato a toda persona culpable, entre otras cosas, de obstinada desobediencia, u oposición intentada o realizada contra cualquier decreto, mandamiento u orden legal, expedido o dictado por algún tribunal en un pleito o proceso de que estuviere conociendo. El artículo 7 de la Ley de Enjuiciamiento Civil expresamente determina las facultades de una corte, y en su inciso cuarto prescribe que toda corte tendrá poder para hacer cumplir sus sentencias, órdenes y providencias. El artículo 28, en su inciso segundo, dice que todo funcionario judicial tiene facultad para obligar a la obediencia de sus órdenes legales, según se dispone en el código, y el artículo 29 dice que para el ejercicio efectivo de las facultades conferidas por el artículo 28 a un funcionario judicial, puede éste castigar por desacato en los casos previstos en el código. El artículo 36 del mismo cuerpo legal dice que cuando por este código o por otra ley se con-

fiera jurisdicción a una corte o funcionario judicial, se le confieren también todos los medios necesarios para hacerla efectiva; y en el ejercicio de ella, si el procedimiento no estuviere especialmente señalado en este código o en otra ley, podrá adoptarse cualquier otro procedimiento o modo adecuado que parezca estar más en armonía con el espíritu de este código.

La corte inferior nos dice en apoyo de su contención que la sentencia concediendo alimentos tiene un procedimiento establecido para su ejecución en el artículo 240 del Código de Enjuiciamiento Civil. La Corte Suprema de West Virginia, en el caso de *Smith* v. *Smith,* 95 S. E. 199, dice que aunque un decreto por alimentos constituye un gravamen en la propiedad inmueble de la parte contra quien se pronuncia y puede ser objeto de un procedimiento de ejecución, sin embargo este decreto, que no dispone simplemente el pago de dinero, sino el pago de una suma en cumplimiento del alto deber marital de proporcionar alimentos, puede hacerse efectivo en un procedimiento por desacato.

Antiguamente la jurisdicción de las cortes de equidad se ejercía exclusivamente sobre la persona del demandado. Los decretos de la corte no tenían la solemnidad de una sentencia dictada por una corte de ley y los procedimientos del derecho común no estaban a su alcance para la ejecución de dichos decretos. El pago de dinero únicamente podía hacerse efectivo mediante un procedimiento de desacato. En Estados Unidos las cortes de equidad tienen hoy por estatuto facultades para ejecutar sus decretos del mismo modo que se ejecutan las sentencias dictadas por las cortes de ley. Estos estatutos que tales facultades conceden a las cortes de equidad, ordinariamente prohiben expresa o implícitamente que se hagan efectivos por medio de desacato los decretos u órdenes de una corte de equidad para el pago de dinero. El caso de *Smith* v. *Smith,* supra, sostiene que el estatuto de West Virginia, del cual surge necesariamente la negación implícita de que pueda hacerse efectivo un decreto de una corte de equidad

para el cobro de dinero mediante un proceso de desacato, no es aplicable a un decreto concediendo alimentos. "Algunas veces se ha sostenido que cuando la ley dispone la ejecución u otro procedimiento para el cobro de la pensión de alimentos, no se puede acudir al remedio adicional de la prisión por desacato. Pero la correcta interpretación es que el estatuto confiriendo los remedios adicionales no priva a las cortes de su poder inherente para hacer efectiva tal orden." Nelson, *Divorce and Separation,* párrafo 939.

Hasta que se permitió la incautación de la propiedad, las cortes de equidad, para hacer efectivas sus órdenes en las varias etapas del litigio y finalmente sus decretos, utilizaban el procedimiento de desacato, actuando solamente *in personam* y no *in rem.* La incautación de la propiedad, sin embargo, no tuvo el propósito de sustituir los procedimientos de desacato, sino por el contrario ayudarlos, acudiéndose a la incautación cuando la parte no podía ser arrestada, o cuando, verificado el arresto, permanecía en prisión, sin prestar obediencia a la corte. *O'Callaghan* v. *O'Callaghan,* 69 Ill. 553.

En Nueva York, en el caso de *Lansing* v. *Lansing,* 4 Lans. 377, se sostuvo que un fallo concediendo alimentos, siendo una sentencia en cobro de dinero que podía ser ejecutada, no autorizaba el procedimiento de desacato para hacerla efectiva. La doctrina establecida en esta decisión fué puesta en tela de juicio en el caso de *Park* v. *Park,* 18 Hun. 466, resuelto en 1879; y en el caso de *Strobridge* v. *Strobridge,* 21 Hun. 288, resuelto en 1880, la corte sostuvo un procedimiento de desacato por haberse negado el demandado a cumplir con una orden requiriendo pagar una suma de dinero al abogado de su esposa para sufragar los gastos del litigio en una acción de divorcio. En este caso la corte cuestionó seriamente la doctrina sentada en *Lansing* v. *Lansing,* supra, y dijo:

"La extensón del uso del auto de ejecución a las cortes de equidad no las priva de ningún remedio anteriormente empleado para hacer efectivos sus decretos."

En el caso de *Cain* v. *Miller,* 191 N. W. 704, resuelto en 1922, la Corte Suprema de Nebraska se expresó así:

"La contención de que no pueden utilizarse los procedimientos de desacato porque puede expedirse un auto de ejecución puede ser correcta bajo los estatutos de algunos estados, pero en este estado la ley de 1883, en su sección segunda, dispone que el remedio por ejecución y el gravamen previsto por la sección primera, serán acumulativos y no derogarán ningún poder subsistente de la corte para hacer efectivas sus sentencias y órdenes. Hemos visto que el remedio para castigar por desacato por no pagar alimentos temporales es uno de los poderes inherentes de la corte en procedimientos de divorcio, según ha sido casi unánimemente sostenido."

En el caso *In re Cave,* 66 Pac. 428, resuelto por la Corte Suprema de Washington, se ratifica la doctrina de que puede castigarse por desacato la desobediencia a una orden concediendo alimentos. De la opinión emitida por la corte en este caso copiamos lo siguiente:

"No podemos convenir con los letrados de la peticionaria en que el cumplimiento del remedio tal cual es decretado por las cortes de jurisdicción general de equidad debe estar definido por el estatuto. Cuando el estatuto guarda silencio respecto al remedio, la corte tiene facultad inherente para hacer cumplir sus sentencias o decretos y órdenes de acuerdo con sus poderes de equidad. El silencio de un estatuto a este respecto no priva a la corte de ningún poder de que esté investida por su jurisdicción como corte de equidad. 3 Pom. Eq. Jur., párrafo 1318; 2 Daniell, Ch. Prac., sec. 1042 *et seq.;* 2 Bish. Mar., Div. & Sep., párrafo 1114; 1 Enc. Pl. & Prac., páginas 434, 437; O'Callaghan v. O' Callaghan, 69 Ill. 552. En este estado el estatuto no dispone regla alguna en relación con el cumplimiento de tales decretos, mas el procedimiento de arresto ha sido generalmente seguido en la práctica y aprobado por esta corte. En el caso de State v. Smith, 17 Wash. 430, 50 Pac. 52, en que a la demandante se concedió por decreto final la suma de $25 mensuales 'como pensión alimenticia y para la manutención de sus hijos,' esta corte dijo: 'Las cortes están en el deber de hacer cumplir sus órdenes, y al tener conocimiento de que tales órdenes no son obedecidas, deben exigir tal obediencia, castigando por desacato.' En el caso de State de Ditmar, 19 Wash. 324, 53 Pac. 350, esta corte se expresó así: 'Se admite que si a la persona contra quien se dicta el decreto le es

imposible cumplir sus condiciones, y esto se le demuestra a la corte, ella será relevada del desacato. Más el caso citado sirve de autoridad respecto a la proposición de que los remedios son acumulativos y de que cuando existen otros remedios y la persona se ha negado contumazmente a obedecer el decreto de la corte, ella puede ser castigada por desacato.' No estamos dispuestos a desviarnos de la regla establecida en estos casos. El caso *In re* Van Alstine, 21 Wash. 194, 57 Pac. 348, es citado como preceptivo de una regla distinta. En dicho caso, sin embargo, la corte declaró que el decreto se refería a dinero, 'que se trataba de un decreto análogo a una sentencia en derecho condenando al pago de una suma de dinero que puede ser exigida mediante un procedimiento contra la propiedad', y que por esa razón se resolvió que la corte carecía de facultad para exigir que el dinero fuese entregado a la corte y para obligar al pago de tal suma mediante encarcelación del obligado.''

En el caso de *Van Dyke* v. *Van Dyke,* 54 S. E. 537, la Corte Suprema de Georgia dijo:

''El punto suscitado por la excepción previa es que la disposición contenida en el decreto final dictado en la causa de divorcio, relativo a honorarios de abogado, no puede ser exigido mediante arresto. Los honorarios concedidos fueron incidentales y formaban parte de la pensión alimenticia que debía pagarse a la esposa. El exigir mediante arresto el pago de la pensión alimenticia permanente decretada en el pleito de divorcio, no es cuestión que esté abierta a discusión en este estado. En el caso de Lewis v. Lewis, 80 Ga. 706, 6 S. E. 918, 12 Am. St. Rep. 281, la esposa obtuvo un veredicto y decreto concediéndole el divorcio absoluto y una suma específica por concepto de pensión alimenticia permanente incluyendo honorarios de abogado, y solicitó posteriormente que se practicara el arresto del marido por desacato cometido al dejar de cumplir el decreto en favor de ella concediéndole pensión alimenticia, procedimiento de desacato al cual se opuso el marido fundado en que la corte carecía de facultad para librar la orden de arresto contra él por el desacato cometido al dejar de pagar la suma fijada en el veredicto del jurado. Aunque estos hechos no aparecen ampliamente expuestos en la publicación oficial del caso, ellos se desprenden de los autos que aparecen archivados en la secretaría de esta corte. En dicho caso se resolvió: 'Cuando una esposa ha obtenido un decreto final concediéndole pensión alimenticia y el marido deja de cumplir con el mismo y se demuestra suficientemente a la corte que esta falta no se debe a la incapacidad por parte del ma-

rido de cumplirlo, la corte no incurre en error al obligarle a cumplir con el mismo mediante una orden de arresto si continúa haciendo caso omiso del decreto.' Además, en un caso en que no haya un pleito de divorcio pendiente y el marido y la mujer estén separados de buena fe, y se ha concedido pensión alimenticia de conformidad con lo dispuesto en el artículo 1895 del Código Civil, sección 2467, el pago de la misma puede ser exigido mediante arresto. Lester v. Lester, 63 Ga. 356; Briesnick v. Briesnick, 100 Ga. 57, 28 S. E. 154. El derecho a exigir el pago de pensión alimenticia permanente mediante procedimiento de desacato corresponde inherentemente a una corte con jurisdicción en pleitos de divorcio, y la excepción fué debidamente desestimada.''

La corte inferior arguye que el castigo por desacato equivaldría a establecer un delito donde sólo existe una obligación civil. También en el seno de la corte, durante la discusión de este caso, nos hemos formulado esta pregunta: Si se encarcela a una persona que desobedece una orden concediendo alimentos, ¿tiene esta reclusión el alcance de constituir una prisión por deuda? Las decisiones que sostienen la negativa son numerosas. No sería aventurado decir que el único Estado de la Unión que sostiene la afirmativa es el Estado de Missouri. La Corte Suprema de Nebraska ha revocado recientemente la doctrina sentada por dicho tribunal en el pasado y se ha unido a la inmensa mayoría de los tribunales sosteniendo que el artículo de la Constitución que prohibe la prisión de una persona por deuda no es aplicable a la voluntaria y obstinada desobediencia de una orden de la corte concediendo alimentos provisionales. *Cain* v. *Miller,* supra.

Los tribunales asignan diversas razones para sostener que la obligación de alimentar no es una deuda dentro de las disposiciones constitucionales que prohiben encarcelamiento por deuda. Una orden concediendo alimentos es simplemente un medio de hacer cumplir un deber que el marido tiene contraído tanto con el público como con su esposa. La prohibición constitucional se aplica únicamente a deudas que se derivan de contratos expresos o implícitos, o de responsabilidades por culpa y negligencia. La prisión se decreta

en realidad por la resistencia a la orden de la corte, cuando la persona que desobedece tiene medios de cumplirla, y no simplemente por haber dejado de pagar el dinero. Estas razones aparecen aducidas por los tribunales en los casos que pasamos a enumerar: *Hurd* v. *Hurd*, (1896) 63 Minn. 443, 65 N. W. 728; *Ex parte Houtsen*, (1908) 154 Cal. 540, 98 Pac. 391; *Ex parte Perkins*, 18 Cal. 64; *Livingston* v. *Superior Ct.*, (1897) 117 Cal. 633, 38 L.R.A. 175, 49 Pac. 836; *Bowman* v. *Wayne Circuit Judge*, (1921) 214 Mich. 518, 183 N. W. 232; *In Re Popejoy*, (1899) 26 Colo. 32, 77 Am. St. Rep. 222, 55 Pac. 1083; *Carlton* v. *Carlton*, (1871) 44 Ga. 216; *Lewis* v. *Lewis*, (1888) 80 Ga. 706, 12 Am. St. Rep. 281, 6 S. E. 918; *Barclay* v. *Barclay*, (1900) 184 Ill. 375, 51 L.R.A. 351, 56 N.E. 636; *Wightman* v. *Wightman*, (1867) 45 Ill. 167; *State ex rel. Huber* v. *King*, (1897) 49 La. Ann. 1503, 22 So. 887; *Adams* v. *Adams*, (1912) 80 N. J. Eq. 175, 83 Atl. 190; *Pain* v. *Pain*, (1879) 80 N. C. 322; *Mowry* v. *Bliss*, (1907) 28 R. I. 114, 65 Atl. 616; *Andrew* v. *Andrew*, (1889) 62 Vt. 495, 20 Atl. 817; *Lyon* v. *Lyon*, (1850) 21 Conn. 185; *West* v. *West*, (1920) 126 Va. 696, 101 S. E. 876; *Tolman* v. *Leonard*, (1895) 6 App. D. C. 224; *Bronk* v. *State*, (1901) 43 Fla. 461, 99 Am. St. Rep. 119, 31 So. 248; *Chase* v. *Ingalls*, (1867) 97 Mass. 524; *In Re Phillips*, (1920) 43 Nev. 368, 187 Pac. 311; *Sheafe* v. *Sheafe*, (1857) 36 N. H. 156; *Sheafe* v. *Laighton*, (1858) 36 N. H. 240; *Wood* v. *Wood*, (1868) 61 N. C. (Phill. L.) 538; *State ex rel. Cook* v. *Cook*, (1902) 66 Ohio St. 566, 58 L.R.A. 625, 64 N.E. 567; *State* v. *Latham*, (1916) 136 Tenn. 30, 188 S. W. 534; *Ex parte Davis*, (1908) 101 Tex. 607, 17 L.R.A. (N. S.) 1140, 111 S. W. 394; *Carnahan* v. *Carnahan*, (1906) 143 Mich. 390, 114 Am. St. Rep. 660, 107 N. W. 73, 8 Ann. Cas. 53.

En el caso de *Audubon* v. *Shufeldt*, 181 U. S. 577, la Corte Suprema de los Estados Unidos dice que los alimentos (*alimony*) no surgen de ninguna transacción de negocio, sino de la relación del matrimonio. No están basados en un contrato expreso o implícito, sino en el deber legal y natural del

marido de sostener a su mujer. La obligación general de alimentarla se hace específica por el decreto de una corte de jurisdicción competente. Termina el alto tribunal diciendo que generalmente hablando los alimentos pueden ser alterados en cualquier tiempo por el tribunal según las circunstancias de las partes puedan requerirlo.

En el caso de *Romaine* v. *Chauncey,* 129 N. Y. 566, se sostuvo por la Corte de Apelaciones de Nueva York que los alimentos (*alimony*) se concedían para sostener y mantener, en cumplimiento del deber general del marido de socorrer a la mujer, siendo éste su único propósito y no concediéndose para otro objeto.

En el caso de *State* v. *King,* supra (49 La. Ann. 1503), se citan los artículos 119 y 120 del Código Civil de Louisiana, según los cuales el marido y la mujer se deben mutua fidelidad, sostenimiento y ayuda, estando el esposo obligado a proporcionar a su mujer lo que sea necesario para la conveniencia de la vida en proporción a su condición y medios de fortuna. Estos artículos contienen idénticas obligaciones a las que se consignan en los artículos 88 y 89 de nuestro Código Civil (ed. 1930), según los cuales los cónyuges están obligados a vivir juntos, guardarse fidelidad y socorrerse mutuamente, debiendo el marido proteger a la mujer y satisfacer sus necesidades en proporción a su condición y medios de fortuna. A raíz de copiar estos artículos dice la Corte Suprema de Louisiana:

"Las obligaciones así declaradas por el legislador, no son en ningún sentido deudas contraídas por el esposo; son simplemente deberes legales reconocidos, y es de importancia suprema para el bienestar de la sociedad que sean no solamente reconocidos sino que se hagan cumplir por las cortes de justicia. Una orden concediendo alimentos en un divorcio no es otra cosa que la sanción judicial del deber del marido de apoyar a la mujer."

Termina la Corte de Louisiana su opinión con estas palabras:

"Hemos llegado a la conclusión, después de una cuidadosa con-

sideración de la cuestión ante nos, que el juez de distrito posee el poder en un caso adecuado, para castigar mediante prisión a un marido condenado a pagar alimentos a su esposa que continuamente se niega a obedecer la orden, disponiendo de los medios para hacerlo. La prisión puede, en un caso determinado, conducir indirectamente al resultado de pago del dinero. Pero la prisión misma se decreta como un castigo contra la desobediencia a la orden de la corte."

Con este último razonamiento de la Corte Suprema de Louisiana y de otras muchas cortes no están conformes todos los tribunales. La Corte Suprema de los Estados Unidos, por ejemplo, dice, en el caso de *Gumpers* v. *Bucks Stove & Range Co.,* 221 U. S. 442, lo siguiente:

"Si se trata de desacatos civiles, la pena se dirige a conseguir un remedio para el beneficio del querellante. Pero si el desacato es criminal, la sentencia es punitiva para vindicar la autoridad de la corte. Es verdad que la pena por encarcelamiento puede perseguir un remedio, así como ser punitiva, y que muchos procedimientos por desacato de carácter civil han resultado no solamente en la imposición de una multa pagadera al querellante, sino también en reducir al demandado a prisión. Pero la prisión por los desacatos civiles se ordena cuando el demandado se ha negado a ejecutar un acto afirmativo requerido por las disposiciones de una orden que, en forma o sustancia, era mandatoria en su carácter. La prisión en tales casos no se impone como una pena, sino más bien para obligar al demandado a ejecutar lo que se ha negado a hacer. El decreto en tales casos es que el demandado debe ser detenido hasta que ejecute el acto afirmativo requerido por la orden de la corte.

"Por ejemplo, si el demandado se niega a pagar alimentos (*alimony*) o a obedecer una orden para entregar bienes a un síndico, o a llevar a cabo una transmisión requerida por un decreto para hacer una cosa específica, él puede ser encarcelado hasta que cumpla con la orden. A menos que éstos sean elementos especiales de contumacia, la negativa a pagar o a cumplir con la orden se estima más bien como una resistencia a la parte contraria que en desacato a la corte. La orden de prisión en esta clase de casos, por lo tanto, no es para vindicar la autoridad de la ley, sino para procurar un remedio, obligando al demandado a hacer la cosa requerida por la orden para el beneficio del querellante. Si es encarcelado, como acertadamente se dijo en *In re* Nevitt, 117 Fed. Rep. 451, 'él tiene las llaves de su prisión en su propio bolsillo' y puede terminar la sen-

tencia y exonerarse en cualquier momento, haciendo lo que previamente se ha negado a ejecutar.''

En el caso *Ex parte Perkins,* supra (18 Cal. 64), la Corte de California se expresó así:

''No es ésta una deuda, dentro del significado del artículo que prohibe prisión por deuda. El marido está obligado a sostener a su mujer, pero este deber es una obligación imperfecta que no puede considerarse técnicamente como una deuda. Él no le debe a ella ninguna cantidad específica de dinero, sino un deber que puede ser efectivo por la orden de una corte obligándole a pagar el dinero. Así, alimentos temporales o permanentes pueden ser decretados por la corte, y puede hacerse, no en una suma alzada o en una sola ocasión, sino en diferentes sumas y en diferentes fechas, a discreción del tribunal. Este poder no queda agotado por una orden que provea el sostenimiento de la esposa durante el litigio. La corte tiene además el poder de decretar el pago de los gastos de la demanda. Las expensas legales pueden ser incluídas en esta disposición, así como los honorarios de abogado. No es ésta una deuda, según ha sido decidido por la Corte Suprema de Connecticut en el caso de Lyon v. Lyon, 21 Conn. 185.''

La Corte Suprema de Nebraska, al revocar sus decisiones anteriores, se expresa así:

''Somos refractarios a interponernos en el camino de anteriores decisiones. Pero cuando ellas no constituyen una regla de propiedad, y pertenecen simplemente a una cuestión de práctica, y la corte no tuvo la valiosa ayuda de los abogados para presentar ambos lados de la cuestión antes de dictar su decisión básica, nosotros no titubeamos en adoptar la propia práctica y en revocar las decisiones erróneas. La regla de *stare decisis* no es tan obligatoria en simples cuestiones de práctica como en decisiones de derecho sustantivo. A pesar de las ideas de algunos pretendidos reformadores, todavía existe el deber legal del marido de socorrer a su mujer, y hasta que este deber haya sido abolido por la legislatura, debe hacerse cumplir. Cuando el incumplimiento de este deber se hace patente ante una corte de competente jurisdicción y una orden *pendente lite* ha sido dictada para que se cumpla la obligación, la desobediencia voluntaria y contumaz de dicha orden por un esposo capaz de ganarse la vida o que dispone de otros medios, sin una causa justa y razonable, constituye en realidad un desacato a la corte y puede ser castigada como tal. Reducir a prisión es un remedio

duro y drástico. Desde luego, si la negativa no es voluntaria, y si el marido en falta procede de buen fe y no tiene medios para pagar los alimentos y no se niega voluntariamente a la orden de la corte; teniendo una justa y razonable causa para dejar de cumplirla, él puede exonerarse del desacato previa prueba al efecto. Nosotros nos sentimos justificados en adoptar la posición ocupada por la mayoría de las cortes en este país, y en revocar Segear v. Segear, 23 Neb. 306, 36 N. W. 536, y Leeder v. State, 55 Neb. 133, 75 N. W. 541, y en sostener que el peticionario, habiendo sido legalmente condenado por desacato por haber desobedecido voluntariamente la orden de la corte, no tiene derecho a un auto de hábeas corpus.'' *Cain* v. *Miller*, supra.

Es innecesario continuar copiando lo que han dicho los tribunales acerca de que la obligación de pagar alimentos no constituye una deuda. Todos los casos que hemos citado sostienen esta doctrina de una manera firme y decidida. La Ley Orgánica de Puerto Rico dispone que no se encarcelará por deuda a ninguna persona. Basándonos en la jurisprudencia de los tribunales continentales, sostenemos que la obligación contraída por los cónyuges de socorrerse mutuamente no constituye propiamente una deuda dentro del significado del precepto constitucional.

Se alega por la representación de Mariano Verdejo que no procede un castigo por desacato cuando se reclaman alimentos por un procedimiento independiente de la acción de divorcio. En términos generales puede decirse que las cortes no establecen diferencias entre una orden *pendente lite* y una sentencia concediendo alimentos permanentes en lo que respecta al medio de hacer efectivo el pronunciamiento del tribunal. Las decisiones que hemos citado cubren indistintamente unos casos y otros. El Tribunal Supremo de Nebraska, por ejemplo, en el caso de *Cain* v. *Miller*, supra, donde se trataba de alimentos temporales, pudo haber distinguido sus anteriores decisiones sobre la base de que las mismas envolvían alimentos permanentes. La corte, sin embargo, no hace tal distinción y expresamente deroga dichos casos.

En Puerto Rico no hay razón alguna para establecer distinciones. Los artículos 88 y 89 del Código Civil (ed. 1930) imponen a los cónyuges el deber de socorrerse mutuamente, estando el marido obligado a proteger a la mujer y a satisfacer sus necesidades en proporción a su condición y medios de fortuna. El artículo 143 del mismo código dice que los cónyuges están obligados recíprocamente a darse alimentos. Estos alimentos pueden reclamarse por el cónyuge que los necesita lo mismo en el curso de una acción de divorcio que en un procedimiento separadamente interpuesto. Sobre este punto no puede haber duda alguna en Puerto Rico, puesto que el ejercicio de una acción separada en reclamación de alimentos está reconocido por la ley. La naturaleza de la reclamación no cambia por el hecho de que se ejercite una acción separada. La obligación es siempre la misma y los medios de hacerla efectiva son idénticos en uno y otro caso. Llámese orden o sentencia definitiva, háyase dictado en una acción de divorcio o en un pleito independiente, el auto de la corte no persigue otro propósito que hacer cumplir al demandado la obligación contraída.

Hemos visto que en *Van Dyke* v. *Van Dyke,* supra, se dice que en un caso en que no haya un pleito de divorcio pendiente y el marido y la mujer estén separados de buena fe, se ha concedido pensión alimenticia de conformidad con lo dispuesto en el Código Civil, y que el pago de la pensión puede ser exigido mediante arresto.

En el caso de *Livingston* v. *Superior Court,* supra, el marido promovió una acción contra su mujer en reclamación de alimentos de acuerdo con el artículo 176 del Código Civil de California. La pensión fué concedida. La esposa traspasó toda su propiedad a su hija el mismo día en que se decretó la concesión de alimentos, después de haberse ordenado que se abstuviese de disponer de su propiedad. Fué castigada por desacato. La corte sostuvo que la obligación de pagar alimentos no es una deuda dentro de las disposiciones de la Constitución y que el poder de la corte para

hacer efectiva la obligación de pagarlos no puede ser dudado. De la opinión emitida por el tribunal de California copiamos lo que sigue:

"Está dentro de la facultad general de las cortes de equidad, en ausencia de un estatuto, conceder pensión alimenticia sin haberse solicitado el divorcio. La cuestión ha sido resuelta en diversas ocasiones en los Estados Unidos y se ha dicho que en Inglaterra las cortes de equidad no conceden tal remedio a no ser como un incidente en un pleito en que se solicita otro remedio. En el tomo 2 de *Story's Equity Jurisprudence,* sección 1422, se dice, con respecto a la cuestión de si las cortes de equidad tienen autoridad general para conceder pensión alimenticia a la esposa cuando carece de otros medios de vida, que 'difícilmente podría decirse que de acuerdo con el resultado de las autoridades pueda darse, en términos positivos, una respuesta afirmativa.' Sin embargo, este jurista dice además (sección 1423) que algunas de nuestras cortes de equidad han dado jurisdicción más amplia a esta cuestión y que se ha resuelto que 'una corte de equidad puede en todos los casos conceder a la esposa pensión alimenticia adecuada de los bienes del esposo, fundada precisamente en que no existe un remedio adecuado en derecho para tal caso. Hay tanto sentido común y tanta razón en esta doctrina, que sería deseable que la misma fuese generalmente adoptada.' La cuestión ha sido muy discutida y en muchos casos considerada con laboriosa amplitud. Entre estos casos, Garland v. Garland, 56 Miss. 694, contiene una acertada revisión de los casos ingleses y demuestra que aun allí algunos casos apoyan la jurisdicción. Prather v. Prather, 4 Desaus. 33, contiene otra discusión amplia de la cuestión, y como una cuestión de principio y autoridad, la jurisdicción de las cortes de equidad para decretar alimentos es mantenida. Milliron v. Milliron, (S. D. Aug. 5, 1896), 68 N. W. Rep. 286, es un caso posterior en el cual se mantiene la misma doctrina.

"Siendo ésta la posición de las autoridades, no hay razón alguna que impida que nosotros nos asociemos a la doctrina enunciada en Galland, v. Galland, supra. Esta doctrina está de acuerdo con el principio general de que cuando existe un derecho y no hay un remedio legal, la equidad debe actuar.

"Si independientemente de cualquier estatuto, las cortes de equidad tienen jurisdicción para decretar alimentos a una mujer aunque no se haya solicitado divorcio, necesariamente se concluye que tienen también jurisdicción cuando es el marido quien solicita ali-

mentos de la mujer. En cada caso el derecho surge del mismo origen—las obligaciones asumidas por el matrimonio según se expresan en la sección 155 del Código Civil: 'El marido y la mujer contraen entre sí las obligaciones de mutuo respeto, fidelidad y mantenimiento.' ''

En el caso de *Galland* v. *Galland,* 38 Cal. 265, citado en la anterior opinión, la Corte Suprema de California escribió una laboriosa opinión, donde sostiene la facultad de las cortes de equidad para decretar alimentos en una acción separadamente ejercitada. Esta facultad, dice la corte, ha sido sostenida y muy bien considerada en casos decididos por las Cortes Supremas de Virginia, Kentucky, North Carolina y South Carolina. Es claro que existe una poderosa obligación moral por parte del marido para sostener a su mujer. El contrato matrimonial y los principios lo obligan a esto. Dejar de hacerlo es un grave error reconocido por la ley común, aunque en esta ley no existe remedio, porque la mujer no puede demandar al marido. Pero en equidad la mujer puede perseguir al marido y descansa en las atribuciones de las cortes de equidad conceder un remedio cuando la conciencia y la ley reconocen un derecho pero no ofrecen un remedio. Aunque en Puerto Rico ésta es una cuestión que no ofrece duda, porque dentro de nuestras leyes puede ejercitarse separadamente la acción de alimentos, vamos a copiar lo que dice la Corte Suprema de California en el citado caso:

"El estatuto de este estado regulando divorcio y alimentos, concede a la mujer el derecho de solicitar el divorcio de un esposo que la ha abandonado por un período de dos años; y al radicar su demanda la corte está autorizada para concederle alimentos, *pendente lite*—y de una manera permanente si tiene éxito en su acción de divorcio. Pero no hay disposición alguna en la ley que autorice una solicitud de alimentos, excepto en conexión con una demanda de divorcio, y se alega en favor del demandado que puesto que la concesión de alimentos sólo procede en una demanda de divorcio, fué la intención de la Legislatura limitar el poder de la corte a conceder alimentos en estos casos. La máxima '*expressio unius est exclusio alterius*' es invocada como aplicable a esta proposición.

Pero, en mi opinión, no tiene aplicación al caso. El fundamento principal del estatuto fué la regulación del divorcio, y como una incidencia a esta cuestión el estatuto prescribe el poder de la corte con respecto a los alimentos en esa clase de casos. La Legislatura no consideró la cuestión general de alimentos como un objeto independiente de legislación, sino solamente como una incidencia de una acción de divorcio. Creyó el legislador conveniente definir el poder de la corte sobre la concesión de alimentos en una solicitud de divorcio; pero no consideró el objeto de los alimentos en ninguna otra clase de casos. Si hubiera dispuesto que un auto de *ne exeat* o *distringas* podía expedirse contra un demandado en una acción de divorcio, difícilmente podría alegarse que esto sería equivalente a una declaración de que tales autos no podrían expedirse en otra clase de acciones. Por la misma razón una disposición autorizando alimentos en una demanda de divorcio no debe ser considerada como una declaración de que tales alimentos no han de permitirse en otras acciones. La máxima que se invoca no tiene aplicación a esta clase de casos.''

La obligación que tiene el marido con respecto a la mujer de satisfacer sus necesidades y alimentarla debe hacerse efectiva de algún modo. Cuando se acude a una corte solicitando alimentos es porque la parte obligada a darlos se niega a cumplir este deber. No es extraño que esta resistencia continúe manifestándose después de haberse concedido alimentos por un tribunal de justicia, en cuyo caso la parte favorecida por la sentencia quedaría burlada en sus derechos si no dispone de medios para hacerlos efectivos. Cuando el marido tiene bienes, puede expedirse una orden de ejecución contra los mismos; pero si se trata de una pensión alimenticia pagadera por mensualidades ¿es justo y razonable obligar al cónyuge que obtuvo la sentencia a solicitar una orden de ejecución todos los meses? La resistencia obstinada del marido daría lugar a una multiplicidad de órdenes de ejecución; y parece natural que se adopten medidas tendentes a evitar estas trabas y dificultades en la administración de justicia. Si, por el contrario, el marido carece de bienes, pero recibe periódicamente dinero como

producto de su trabajo, ya porque esté colocado o porque tenga entradas de otra índole, el procedimiento de ejecución no resultaría un remedio adecuado. Lo mismo ocurriría cuando el esposo oculta sus bienes. En uno y otro caso fracasarían los fines de la justicia y las disposiciones del Código Civil quedarían incumplidas, por falta de un remedio adecuado en la ley para hacerlas efectivas. Nuestros tribunales tienen por la ley jurisdicción para actuar, y deben disponer, y disponen por ministerio de la misma ley, de todos los médios necesarios para hacer efectiva su jurisdicción. Y aunque la ley no los dispusiese, sus deficiencias quedarían suplidas por las facultades inherentes de los tribunales y la razón natural conforme a equidad y los principios generales del derecho. Las actuaciones de los tribunales deben inspirarse en la equidad y la justicia.

En este caso nos limitamos a resolver la cuestión planteada. La corte inferior tiene facultades para castigar por desacato la desobediencia voluntaria y obstinada a una orden o sentencia concediendo alimentos. El tribunal *a quo* declara que carece de esas facultades. Nosotros resolvemos que las tiene y que puede hacer uso de ellas cuando las circunstancias del caso lo requieran. No penetramos en los méritos de la cuestión. Sí decimos que no debe encarcelarse a una persona condenada al pago de alimentos a menos que se demuestre una voluntaria y obstinada desobediencia a las órdenes de la corte. Si el cónyuge obligado por la sentencia demuestra que no puede pagar y ofrece una excusa justa y razonable, la corte debe exonerarle de toda culpa, ya que sus actos no revelan desobediencia al mandato judicial.

*Debe anularse la resolución recurrida y devolverse el caso a la corte inferior para procedimientos ulteriores no incompatibles con esta opinión.*