Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| EL PUENTE DE WILLIAMSBURG, INC.<br><br>**Parte recurrida**<br><br>v.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES, HON. ANAI RODRÍGUEZ VEGA, SECRETARIA INTERINA DE RECURSOS NATURALES Y AMBIENTALES Y OTROS<br><br>**Parte peticionaria** | **TA2026CE00056** | *CERTORARI* procedente del Tribunal de Primera Instancia Sala Superior de **San Juan**<br><br>Caso Número: **SJ2022CV03708**<br><br>Sobre:<br><br>**MANDAMUS** |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece ante nos el Departamento de Recursos Naturales y Ambientales, en adelante, DRNA o peticionario, y nos solicita que revisemos la *Orden* del Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante, TPI-SJ, notificada el 22 de diciembre de 2025. En la misma, el Foro Recurrido concedió al peticionario un término final de treinta (30) días para presentar el *Inventario Anual de las Emisiones de Gases de Efecto de Invernadero en Puerto Rico*, en adelante, Inventario de Gases, según dispone la Ley Núm. 33 de 22 de mayo de 2019, intitulada *Ley de Mitigación, Adaptación y Resiliencia al Cambio Climático de Puerto Rico*, 12 LPRA sec. 8011 *et seq.*, en adelante, Ley Núm. 33-2019. Además, advirtió que el incumplimiento con el referido dictamen conllevaría la emisión de una orden de arresto e ingreso por *desacato civil* contra el peticionario.

Por los fundamentos que expondremos a continuación, *expedimos* el recurso solicitado y **revocamos** la *Orden* recurrida.

**I.**

El 10 de mayo de 2022, El Puente de Williamsburg, Inc., en adelante, El Puente o recurrido, instó una *Petición de Mandamus* ante el Foro Recurrido, con el fin de exigir el cumplimiento de determinados deberes ministeriales que la Ley Núm. 33-2019 presuntamente le impone al peticionario.[1] En específico, solicitaron que, entre otras cosas, el DRNA actualizara y publicara el Inventario de Gases. Ello pues, alegaron que dicho documento no había sido actualizado desde el año 2014, en claro incumplimiento con el precitado estatuto.

Tras numerosos incidentes procesales, el 18 de noviembre de 2022, el Foro Primario dictó *Sentencia*, mediante la cual expidió el *Mandamus* solicitado por El Puente. En virtud de ello, y luego de realizar un balance entre los intereses implicados a la luz de las circunstancias particulares del caso, ordenó que el peticionario cumpliera con los deberes ministeriales que le impone la Ley Núm. 33-2019 a la brevedad posible.[2] En lo pertinente, ordenó que este actualizara y publicara el Inventario de Gases.

Adicionalmente, ordenó la presentación de un plan de trabajo en el cual pormenorizara las gestiones necesarias para cumplir con los aludidos deberes ministeriales, los cuales deben atender el rigor técnico y especializado que requiere la antedicha Ley. No obstante,

---

[1] SUMAC TPI, entrada núm. 1. Dado el volumen de los trámites procesales del caso, consultamos directamente las entradas correspondientes al SUMAC del Foro Primario, al cual haremos referencia prospectivamente.

[2] En el referido dictamen, el Foro Primario rehusó la imposición de fechas determinadas para el cumplimiento de lo ordenado debido a que tales deberes ministeriales no eran de fácil ejecución, de manera que "no sería beneficioso para el interés público y la ejecución de la política pública de Puerto Rico para atender los problemas del cambio climático que el Tribunal establezca unas fechas que no respondan a la realidad práctica y operacional de las entidades peticionadas, pues un mandato de esa naturaleza pudiera resultar en que los documentos que se preparen (el Plan de Mitigación y el Inventario Anual) sean incompletos o carezcan del rigor necesario que requiere la propia Ley Núm. 33- 2019". Véase SUMAC TPI, entrada núm. 54, págs. 24-25.

el Foro Primario *retuvo su jurisdicción* a los únicos efectos de velar por el cumplimiento de los remedios concedidos.

Según le fue ordenado, el 2 de diciembre de 2022, el DRNA presentó el referido plan de trabajo.[3] En este, proyectó, entre otras cosas, que publicaría para finales del año 2023 un *Plan de Mitigación, Adaptación y Resiliencia al Cambio Climático*, en adelante Plan de Mitigación, conforme dispone la Ley Núm. 33-2019, sujeto a la disponibilidad presupuestaria para su preparación. No obstante, nada estableció en cuanto a la fecha en que actualizaría y publicaría el Inventario de Gases, por lo que El Puente presentó su posición en cuanto al referido plan de trabajo.[4]

En consecuencia, el 24 de enero de 2023, el Foro Recurrido celebró una vista argumentativa en la cual requirió el cumplimiento específico de las fechas que el peticionario estableció en su plan de trabajo, salvo que se autorizara un cambio en cuanto a las mismas.[5]

Posteriormente, se suscitó un prolongado periodo de la etapa post-sentencia que consistió, primordialmente, de constantes denuncias por parte de El Puente en cuanto al incumplimiento del DRNA con el plan de trabajo aprobado por el Foro Primario, así como con los deberes ministeriales impuestos por la Ley Núm. 33-2019 y por la *Sentencia*. En virtud de ello, el DRNA compareció en múltiples ocasiones para justificar la dilación en la ejecución en sus deberes, basado en el carácter técnico de los documentos exigidos, así como retos y obstáculos presupuestarios y contractuales.

Pertinente a la controversia que nos ocupa, el 26 de julio de 2023, el DRNA informó que el Inventario de Gases correspondiente a los años 2019 y 2021 se había publicado.[6] Asimismo, en una vista celebrada el 30 de noviembre de 2023, se informó que la Agencia de

---

[3] SUMAC TPI, entrada núm. 55.
[4] *Íd.*, entrada núm. 59.
[5] *Íd.*, entrada núm. 65.
[6] *Íd.*, entrada núm. 103.

Protección Ambiental federal[7] había aprobado una subvención para financiar la preparación de dicho documento.[8]

Así las cosas, el 22 de abril de 2024, el DRNA informó que el Comité de Expertos y Asesores de Cambio Climático presentó el borrador final del Plan de Mitigación ante la Comisión Conjunta sobre Mitigación, Adaptación y Resiliencia al Cambio Climático de la Asamblea Legislativa de Puerto Rico.[9] Por tal razón, adujo que dicho comité cumplió con el deber ministerial que le impone la Ley 33-2019, por lo que solicitó que se diera por cumplida la *Sentencia* según emitida 18 de noviembre de 2022.

Vencido el término concedido por el Foro Primario sin que el recurrido se expresara sobre tal asunto, el 6 de mayo de 2024, el TPI-SJ decretó el archivo del caso de marras.[10] Sin embargo, el 21 de mayo de 2024, El Puente presentó oportunamente una moción de reconsideración.[11] En la misma, esencialmente sostuvo que la *Sentencia* también disponía que el DRNA tenía el deber ministerial de actualizar y publicar el Inventario de Gases, lo cual debe realizarse anualmente conforme a las disposiciones de la Ley Núm. 33-2019. Adujo que, en la medida que aún no se había publicado el documento correspondiente a los años 2022 y 2023, el DRNA todavía no había satisfecho la *Sentencia*.

El 30 de mayo de 2024, el DRNA se opuso al escrito del recurrido.[12] En lo pertinente al Inventario de Gases, sostuvo que estaba encaminado a preparar un aviso para recibir las solicitudes de propuestas que viabilizaran la contratación de una entidad que elabore el aludido documento, por lo que tales gestiones justificaban que se mantuviera archivado el caso.

---

[7] EPA, por sus siglas en inglés.
[8] SUMAC TPI, entrada número 146.
[9] *Íd.*, entrada núm. 149.
[10] *Íd.*, entrada núm. 151.
[11] *Íd.*, entrada núm. 152.
[12] *Íd.*, entrada núm. 154.

Ante ello, 14 de junio de 2024, el Foro Primario emitió una *Resolución* para aclarar que su *Orden* del 6 de mayo de 2024 decretaba el archivo solo en cuanto al deber de presentar el Plan de Mitigación.[13] Sin embargo, aclaró que el DRNA aún tenía el deber de preparar el Inventario de Gases conforme a las disposiciones de la Ley 33-2019. Sobre esto, le recordó al recurrido que podía presentar cualquier reclamo relacionado a tal deber ante el foro administrativo o judicial, en caso de surgir controversia alguna.

Consecuentemente, el 2 de diciembre de 2025, El Puente volvió a acudir ante el Foro Primario, e informó que el DRNA continuaba incumpliendo con el deber de actualizar y publicar anualmente el Inventario de Gases.[14] Ello pues, a pesar de que se cumplió con los correspondientes a los años 2019 y 2021, no se continuó con los años subsiguientes, por lo que solicitaron una orden a tales efectos.

Según le fuera ordenado, el 15 de diciembre de 2025, el DRNA se opuso a los solicitado por el recurrente.[15] En su escrito, afirmó que el caso se encontraba archivado por más de un (1) año, por lo que el recurrido no podía reabrir controversias con ella relacionada. No obstante, precisó que se encontraba en gestiones para publicar un segundo aviso para recibir solicitudes de propuestas, conducentes a contratar el personal que trabajaría el Inventario de Gases correspondiente a los años 2022 al 2024.

Trabada la controversia, el 19 de diciembre de 2025, el TPI-SJ emitió la orden objeto de revisión en el presente recurso, notificada el 22 de diciembre de 2025.[16] Mediante esta, determinó que el DRNA no había cumplido con su deber ministerial de publicar el Inventario de Gases según requerido por la Ley Núm. 33-2019, tal cual le fue

---

[13] SUMAC TPI, entrada núm. 155.
[14] *Íd.*, entrada núm. 156.
[15] *Íd.*, entrada núm. 162.
[16] *Íd.*, entrada núm. 165.

ordenado mediante la *Sentencia*. Por tal razón, concedió un término fatal de treinta (30) para cumplir con dicho deber, cuyo incumplimiento conllevaría la emisión de una orden de arresto e ingreso por desacato civil contra el peticionario.

En desacuerdo, el 6 de enero de 2026, el DRNA presentó una moción de reconsideración,[17] la cual fue declarada *No Ha Lugar* mediante otra *Orden* emitida el 7 de enero de 2026.[18]

Aún inconforme con el proceder del Foro Primario, el peticionario recurrió ante esta Curia mediante un recurso de *certiorari* fechado el 14 de enero de 2025, y señaló la comisión del siguiente error:

> Erró y abusó crasamente de su discreción el Tribunal de Primera Instancia al conceder un término final de treinta días a vencer el 20 de enero de 2026 para presentar al Inventario de Gases de Efecto de Invernadero y que, de lo contrario, emitirá orden de arresto e ingreso por desacato civil. Ello, particularmente, sin la celebración de una vista previa en la cual la agencia y el funcionario tengan la oportunidad de ser oídos.

Ese mismo día, el peticionario presentó una *Urgente Solicitud en Auxilio de Jurisdicción*, mediante el cual nos solicitó la paralización de los efectos de la *Orden* recurrida. En virtud de ello, emitimos una *Resolución* el 15 de enero de 2025, en la cual declaramos *Con Lugar* la misma, y *ordenamos la paralización de los procedimientos ante el TPI-SJ*. Finalmente, el 28 de enero de 2026, luego de que le concediéramos una breve prórroga, El Puente presentó su *Oposición a la Expedición del Auto de Certiorari y Alegato*.

Con la comparecencia de ambas partes, procedemos a expresarnos.

---

[17] SUMAC TPI, entrada núm. 166.
[18] *Íd.*, entrada núm. 167.

**II.**

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Allio v. Santiago Chardón,* 2026 TSPR 13, 217 DPR ___ (2026); *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020).

Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente,

cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. Torres González v. Zaragoza Meléndez, supra. La precitada Regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> > (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> >
> > (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> >
> > (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Reglamento del Tribunal de Apelaciones, supra, pág. 59; *Allio v. Santiago Chardón*, supra; *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

*Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**B. Desacato**

El desacato es un procedimiento *sui generis* que requiere la intervención inmediata del tribunal con la finalidad de que este rehabilite su autoridad y dignidad. *In re Hon. Benero García*, 202 DPR 318, 381 (2019); *In re Velázquez Hernández*, 162 DPR 316, 326 (2004); *In re Cruz Aponte*, 159 DPR 170, 182 (2003). Su base jurídica emana de tres (3) fuentes cimentadas en el poder inherente de los tribunales para hacer cumplir sus órdenes. *E.L.A. v. Asoc. de Auditores*, 147 DPR 669, 682 (1999).

Mediante este procedimiento, los tribunales se encuentran facultados para castigar por desacato con el fin de ejercer efectivamente su poder cuando persigue, entre otras cosas, mantener y asegurar el orden en los procedimientos ante su consideración; hacer cumplir sus órdenes, sentencias y providencias; e incluso, para realizar u ordenar cualquier acto necesario para cumplir cabalmente con sus funciones. *E.L.A. v. Asoc. de Auditores*, supra, pág. 682. Véase, además, Art. 2.017 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003, 4 LPRA sec. 24o.

Para efectos de esta figura, constituyen actos o conductas constitutivas de desacato aquellos que propendan a impedir u obstruir la administración de la justicia por el tribunal o que de alguna manera menoscabe la autoridad o dignidad de este último. *In re Hon. Benero García*, supra, pág. 382, citando a S.P. Amadeo, *El poder de los tribunales en Puerto Rico para castigar por desacato*, Madrid, Ed. Revista de Derecho Privado, 1961, pág. 5; *In re Velázquez Hernández*, supra.

Nuestro ordenamiento reconoce dos (2) tipos de desacato: *el civil* y el criminal. El procedimiento a seguir para ejercer alguna de

estas clasificaciones se determina a base del propósito del castigo, y no por el carácter del acto constitutivo de desacato. *E.L.A. v. Asoc. de Auditores*, supra, pág. 683. Por un lado, el desacato criminal es aquel disponible cuando el juez persigue castigar para vindicar la dignidad del tribunal cuando la persona incurre en alguna conducta delictiva que interrumpe los procedimientos judiciales y menoscaba el respeto debido al tribunal. *In re Hon. Benero García*, supra, pág. 382; *In re Velázquez Hernández*, supra, pág. 327; *In re Cruz Aponte*, supra, pág. 183.

Por su parte, y contrario a la naturaleza punitiva del desacato criminal, el castigo impuesto por el *desacato civil* reviste un carácter coercitivo y reparador. Ello pues, este tipo de desacato persigue compeler, principalmente, el cumplimiento de una orden emitida por el tribunal. *In re Velázquez Hernández*, supra, pág. 327, citando a D. Nevárez-Muñiz, *Sumario de Derecho Procesal Penal Puertorriqueño*, 4ta ed., San Juan, Inst. Desarrollo del Derecho, 1995 pág. 239; *In re Cruz Aponte*, supra, págs. 182-183; *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 DPR 782, 805 (1992).

Para la consecución de este fin, el *desacato civil* conlleva la imposición de una penalidad por un término indefinido, cuya efectividad queda condicionada a que la persona cumpla con una orden de tribunal o alguna obligación primaria que forma parte de la acción civil principal. *In re Hon. Benero García*, supra; *In re Cruz Aponte*, supra, pág. 182; *E.L.A. v. Asoc. de Auditores*, supra. Lo anterior obedece a que la observancia de las órdenes emitidas por el tribunal es esencial para la sana administración de la justicia. *Srio. D.A.C.O. v. Comunidad San José, Inc.*, supra, pág. 804.

Al discutir el estándar aplicable al desacato civil, el Tribunal Federal para el Distrito de Puerto Rico estableció que, para encontrar a una persona incursa en este tipo de desacato, el tribunal debe determinar, mediante el desfile de evidencia clara y

convincente, que hubo notificación efectiva de la orden, que esta era clara y definitiva, que la persona a la que iba dirigida tenía la capacidad para cumplir con ella, y que aun así violó la orden. *Brown v. Colegio de Abogados de Puerto Rico*, 765 F.Supp.2d 133, 138 (D. Puerto Rico, 2011)(Traducción nuestra).

Resulta meritorio resaltar que toda determinación para imponer una penalidad o sanción por desacato debe respetar las garantías mínimas del debido proceso de ley. *E.L.A. v. Asoc. de Auditores*, supra, págs. 684-685. Cuando se trata de un desacato civil, el castigo se puede imponer en un procedimiento civil ordinario, siempre que a la persona que se le imputa el cumplimiento sea notificada oportunamente y **se le brinde la oportunidad de ser escuchada**. *E.L.A. v. Asoc. de Auditores*, supra, pág. 685, citando a *International Union, United Mine Workers of America v. Bagwell*, 512 US 821, 827 (1994).

De ahí que la imposición del desacato no procede cuando el obligado logra demostrar que su incumplimiento halla una excusa justa y razonable, contrapuesto a un adecuado balance entre los intereses de la comunidad concernida y aquellos protegidos constitucionalmente. *Srio. D.A.C.O. v. Comunidad San José, Inc.*, supra, pág. 805; *Villa v. Corte*, 45 DPR 879, 900 (1933).

Finalmente, no existe duda sobre el poder inherente para castigar por desacato ampliamente reconocido a los tribunales. *In re Benero García*, supra, pág. 381; *In re Cruz Aponte*, pág. 183; *In re Collazo I*, 159 DPR 141, 150 (2003); *Srio. D.A.C.O. v. Comunidad San José, Inc.*, supra, pág. 804. No obstante, nuestro Tribunal Supremo ha expresado que el desacato debe utilizarse como última alternativa cuando los jueces quieran vindicar la autoridad del tribunal, puesto que su uso indiscriminado equivaldría a una falta de temperamento judicial. *In re Benero García*, supra, pág. 382; *In re Cruz Aponte*, supra, pág. 181.

Después de todo, los tribunales tienen a su alcance múltiples métodos para hacer cumplir sus órdenes, entre los que se encuentra la imposición de multas y sanciones económicas. *In re Collazo I*, supra, págs. 150-151. Por cuanto, el procedimiento de desacato "no puede convertirse en una herramienta de opresión que destruya el propio orden e integridad del proceso que la ley quiso mantener. *In re Hon. Benero García*, supra, págs. 382-383.

### C. Sanciones

Sabido es que nuestro ordenamiento jurídico favorece que los casos se ventilen en sus méritos de forma justa, económica y rápida. Sin embargo, esto no implica que una parte ostente un derecho a que su caso adquiera "vida eterna en los tribunales, manteniendo a la otra en un estado de incertidumbre, sin más excusa para su falta de diligencia e interés en la tramitación del mismo que una escueta referencia a circunstancias especiales". *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 202-203 (2012); *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 369 (2003); *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 221-222 (2001).

Es harto conocido que los tribunales ostentan la autoridad para intervenir e imponer sanciones a las partes de un caso y a sus abogados. *Div. Empleados Públicos UGT v. CEMPR*, 212 DPR 742, 753 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 297, 298 (2012). Ello con el fin de desalentar la falta de diligencia y el incumplimiento con sus órdenes. *Mejías et al. v. Carrasquillo et al.*, supra, pág. 298. El Tribunal Supremo de Puerto Rico ha establecido que la imposición de sanciones es un remedio en contra de la congestión procesal en los tribunales, y un mecanismo para agilizar la resolución de las controversias. *Div. Empleados Públicos UGT v. CEMPR*, supra, pág. 754; *Lluch v. España Service Sta.*, supra, págs. 748-749.

Conforme lo anterior, el tribunal puede, a iniciativa propia, "imponer sanciones cuando la conducta de las partes vaya en perjuicio de la eficiente administración de la justicia". *Div. Empleados Públicos UGT v. CEMPR*, supra; *Pérez Torres v. Acad. Perpetuo Socorro*, 182 DPR 1016, 1035 (2011); *Lluch v. España Service Sta.*, supra, pág. 749.

Por último, y en lo que respecta a la imposición de sanciones como instrumentos para vindicar la autoridad judicial, el tratadista José A. Cuevas Segarra, nos ilustra que:

> Las sanciones deben aplicarse con rigor para que *sirvan de manera ejemplarizante y como disuasivo*. Sólo cuando los tribunales comiencen a imponer sanciones adecuadas es que los litigantes y abogados que incurren en tácticas indebidas reevaluarán su técnica y enfoque en la litigación. [...]
>
> J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2011, 2da ed. Tomo III, Publicaciones JTS, pág. 1007. (Énfasis nuestro).

### III.

El DRNA recurre ante nos con el fin de impugnar el mecanismo empleado por el Foro Primario para lograr el cumplimiento de la *Orden* recurrida. En síntesis, alega que el Foro Primario erró al disponer que emitiría una orden de arresto e ingreso por desacato civil contra el actual Secretario del DRNA si no se presentaba el Inventario de Gases en o antes del 20 de enero de 2026. Aduce que la omisión de celebrar una vista como paso previo a la emisión de la referida orden de arresto constituye una violación a su debido proceso de ley. Además, arguye que este mecanismo debería estar disponible como último remedio, y no como primera opción ante el incumplimiento de la orden objeto de revisión en este recurso.

Sobre la imposición del plazo final para el cumplimiento del referido dictamen, afirma que tal término no toma en consideración el carácter técnico y complejo del proceso de preparación del

Inventario de Gases, tal cual lo había reconocido el propio Foro Recurrido en su *Sentencia*. Por tanto, aduce que la imposición del referido plazo constituyó un abuso de discreción judicial, pues aún se encontraba en proceso de contratar la entidad que prepararía el documento, lo que haría imposible su preparación dentro del término final concedido.

Por su parte, El Puente aduce que el Foro Primario no ha emitido una orden de arresto, por lo que la solicitud del peticionario es improcedente y prematura. No empece a ello, arguye que se han celebrado varias vistas de seguimiento a lo largo del proceso judicial, por lo que el DRNA ha tenido oportunidad de defenderse en cuanto a las razones para su incumplimiento como paso previo a la determinación de desacato. Por tanto, sostiene que resulta innecesario celebrar otra vista para presentar prueba de la presunta imposibilidad del cumplimiento.

De otro lado, alega que la fijación del término final de treinta (30) días para la actualización del Inventario de Gases resulta razonable y justificada, puesto que el DRNA ha incurrido en un vasto periodo de incumplimiento con las disposiciones de la Ley Núm. 33-2019, así como con las determinaciones de la *Sentencia*. A tales fines, reitera que, en los años más recientes, las presuntas gestiones del DRNA para cumplir con su deber ministerial se han limitado a publicar dos (2) avisos públicos para conseguir la contratación de una entidad que prepare y actualice el Inventario de Gases para los años reclamados por el recurrido.

Cual citado, el procedimiento de *desacato civil* faculta la intervención de los tribunales para compeler el cumplimiento efectivo de las órdenes y sentencias que emiten. Previo a encontrar a una parte incursa en este tipo de desacato, el tribunal tiene el deber de celebrar una vista que honre las garantías mínimas del debido proceso de ley, por lo que la misma debe notificársele

oportunamente para que la parte tenga la oportunidad de defenderse sobre el presunto incumplimiento.

Aun cuando se les reconoce tal facultad, el castigo por desacato constituye la última alternativa ejercible para el cumplimiento de las providencias judiciales. Ello pues, los tribunales cuentan con otros métodos para disuadir la falta de diligencia y el incumplimiento con sus órdenes, tales como la imposición de multas y sanciones económicas a las partes.

Una lectura íntegra del dictamen recurrido, contrapuesto al derecho aplicable, nos revela que, en efecto, el TPI-SJ erró al determinar —precipitadamente— que procedía la emisión de una orden de arresto e ingreso por desacato civil contra el DRNA como primera opción ante el posible escenario que este incumpliera con su orden de producir el Inventario de Gases en o antes del 26 de enero de 2026.

De la referida *Orden* no se desprende que el Foro Recurrido dispusiera que dicho castigo quedaba condicionado a la celebración de una vista como paso previo a la emisión de la orden de arresto. En otras palabras, el Foro Recurrido no calendarizó una vista de desacato civil para brindarle la oportunidad al DRNA de presentar prueba clara y convincente para evidenciar que se encontraba incapaz para cumplir con la *Orden* recurrida dentro del término final que le fue concedido.

Por lo tanto, *le asiste la razón* al peticionario al señalar que la imposición de dicho castigo bajo tales términos atenta contra las garantías mínimas del debido proceso de ley que le cobija en el ejercicio de dicho mecanismo. Ante ello, opinamos que el TPI-SJ cometió el error señalado a tales efectos.

Dicho esto, hemos tenido la oportunidad de evaluar el extenso expediente del caso de marras, mediante el cual hemos constatado que el DRNA ha incurrido en un patrón de falta de diligencia en el

cumplimiento del deber que le impone la Ley Núm. 33-2019 para actualizar y publicar anualmente el Inventario de Gases.

Aunque no podemos obviar que la preparación del documento en controversia sí alberga un carácter técnico y complejo, no es menos cierto que el DRNA ha contado desde los últimos años con los recursos fiscales para lograr la contratación del personal especializado que pueda actualizar el mismo con el rigor que exige la Ley Núm. 33-2019.

Es decir, constatamos que el DRNA estuvo en gestiones para obtener fondos que viabilizaran la contratación del personal que se encargaría de la actualización del Inventario de Gases correspondiente al año 2022, así como para los años subsiguientes. Sin embargo, luego de obtener los referidos fondos, tiene razón el recurrido al señalar que las gestiones posteriores se han limitado a publicar tan solo dos (2) avisos públicos para lograr tales contratos, impulsadas esencialmente por la cadena de denuncias de incumplimiento que ha realizado El Puente.[19]

No hallamos criterio adicional que nos persuada a concluir razón alguna por la que el DRNA no pueda actualizar el Inventario de Gases para el año 2022 y los años subsiguientes, máxime cuando logró el mismo objetivo para los años 2019 y 2021. Por ello, somos del criterio que el DRNA no puede descansar en la naturaleza del Inventario de Gases para prolongar la contratación de una compañía que realice tal gestión, máxime cuando ya cuenta con los recursos necesarios para puntualizar la misma. Por lo tanto, advertimos que este debe ser más diligente en el cumplimiento de los deberes que la Ley Núm. 33-2019 le impone.

---

[19] A modo de ejemplo, como la mayoría de las gestiones realizadas por el peticionario, la publicación del aviso para someter solicitudes de propuesta más reciente nos parece concomitante con las últimas denuncias de incumplimiento hechas por el recurrido.

Ahora bien, en virtud de que el peticionario informó que se encontraba en un proceso activo para evaluar las solicitudes de propuestas que le fuesen sometidas a raíz de su último aviso publicado en diciembre del año 2025, entendemos prudente y necesario que el TPI-SJ establezca un nuevo calendario para darle seguimiento a las gestiones concretas a realizarse posteriormente por el DRNA para la consecución del claro deber ministerial que le impone la Ley Núm. 33-2019 sobre la actualización anual del Inventario de Gases.

En igual medida, nos convencen los argumentos del peticionario en cuanto que el desacato debería ser el último mecanismo que debe ejercer el Foro Primario para hacer valer el cumplimiento de la *Sentencia* y las órdenes que de ella se derivan. Por consiguiente, colegimos que el TPI-SJ debe emplear prospectivamente su facultad para imponer sanciones económicas como medida disuasiva del incumplimiento con el nuevo calendario que se apruebe en su momento. Solo en caso de que surja un incumplimiento obstinado y contumaz con el mismo, procedería la imposición del desacato civil como última alternativa, previa notificación y celebración de una vista a tales efectos.

**IV.**

Por los fundamentos antes esbozados, **revocamos** la *Orden* recurrida y devolvemos el caso de autos al TPI-SJ para la continuación del procedimiento post-sentencia a tenor con lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones